# Exhibit 1



# Notice of Service of Process

**A3M / ALL**
**Transmittal Number: 22464209**
**Date Processed: 12/22/2020**

| | |
|---|---|
| **Primary Contact:** | Arnold D'Angelo<br>Zurich North America<br>1299 Zurich Way<br>Schaumburg, IL 60196-1056 |
| **Electronic copy provided to:** | Vicky Russell |

| | |
|---|---|
| **Entity:** | Zurich American Insurance Company<br>Entity ID Number  2746725 |
| **Entity Served:** | Zurich American Insurance Company |
| **Title of Action:** | Count Basie Theatre Inc. vs. Zurich American Insurance Company |
| **Matter Name/ID:** | Count Basie Theatre Inc. vs. Zurich American Insurance Company (10761864) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Monmouth County Superior Court, NJ |
| **Case/Reference No:** | MON-L-003895-20 |
| **Jurisdiction Served:** | New Jersey |
| **Date Served on CSC:** | 12/21/2020 |
| **Answer or Appearance Due:** | 35 Days |
| **Originally Served On:** | NJ Department of Banking and Insurance on 12/14/2020 |
| **How Served:** | Certified Mail |
| Sender Information: | Michael J. Canning<br>732-741-3900 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



## State of New Jersey
### Department of Banking and Insurance
Office of the Commissioner
PO Box 325
Trenton, NJ 08625-0325

**Phil Murphy**
*Governor*

**Sheila Oliver**
*Lt. Governor*

Tel (609) 633-7667

**Marlene Caride**
*Commissioner*

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

12/14/2020

Attention:
CORPORATION SERVICE COMPANY
ZURICH AMERICAN INSURANCE COMPANY
PRINCETON SOUTH CORPORATE CENTER
100 CHARLES EWING BOULEVARD, SUITE 160
EWING, NJ 08628

RE: Count Basie Theatre, Inc. v. Zurich American Insurance Company
    Superior Court of New Jersey, Monmouth County Law Division
    Docket No.:  MON-L-3895-20

Dear Sir/Madam:

You are hereby notified that on this date the Commissioner of the New Jersey Department of Banking and Insurance has accepted original service of process on your behalf in the above-captioned matter.  The documents served are enclosed herein.

By copy of this letter I am advising the attorney for the Plaintiff(s) in this matter that these documents have been transmitted to you, and confirming that the Commissioner of Banking and Insurance is not authorized to receive service of any further documents in this action.

Very Truly Yours,

**Debra A. Mullen**
Administrative Assistant

C:  Giordano, Halleran & Ciesla, P.C.
    ATTN:  Michael J. Canning, Esq.
    125 Half Mile Road, Suite 300
    Red Bank, NJ 07701-6777

Michael J. Canning, Esq. (032541984)
GIORDANO, HALLERAN & CIESLA, P.C.
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
(732) 741-3900
Attorneys for Plaintiff, Count Basie Theatre Inc.

| | |
|---|---|
| COUNT BASIE THEATRE INC., <br><br>             Plaintiff, <br><br>         v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br><br>             Defendant. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br> MONMOUTH COUNTY <br><br> DOCKET NO. MON-L-3895-20 <br><br>           Civil Action <br><br>           **SUMMONS** |

**TO:   Zurich American Insurance Company**
     **c/o New Jersey Department of Banking and Insurance**
     **1299 Zurich Way, 5th Floor**
     **Schaumberg, IL 60196**

The Plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf

/s  Michelle M. Smith_____

MICHELLE M. SMITH,

Clerk of the Superior Court

Dated:  July 2, 2020

# Directory of Superior Court Deputy Clerk's Offices
# County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl.,  Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records,  Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
118 Washington Street, Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
Attn: Civil Case Management Office
92 Market Street
Salem, NJ 08079

LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, N.J. 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073

LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500

LAWYER REFERRAL
(908) 859-4300
LEGAL SERVICES
(908) 475-2010

Docs #4774760-v1

Michael J. Canning, Esq. (032541984)
GIORDANO, HALLERAN & CIESLA, P.C.
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
(732) 741-3900
Attorneys for Plaintiff, Count Basie Theatre Inc.

| | |
|---|---|
| COUNT BASIE THEATRE INC., | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | LAW DIVISION |
| | MONMOUTH COUNTY |
| v. | |
| | DOCKET NO. MON-L- |
| ZURICH AMERICAN INSURANCE COMPANY, | |
| | Civil Action |
| Defendant. | |
| | **COMPLAINT, JURY DEMAND, DESIGNATION OF TRIAL COUNSEL, CERTIFICATIONS** |

Plaintiff, Count Basie Theatre Inc. ("*Count Basie*" or "*Plaintiff*" or "*Insured*"), by way of complaint against Defendant Zurich American Insurance Company ("*Defendant*" or "*Zurich*") hereby says as follows:

## THE PARTIES

1.      Count Basie is a New Jersey corporation which owns, and / or operates out of, six insured facilities in Red Bank, Monmouth County, New Jersey, including the landmark Count Basie Theatre.  Zurich is a commercial property and casualty insurance company which issued a commercial package property insurance policy to Count Basie.  The Zurich Policy is in dispute in this action.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction of this action because it is an action at law with more than $15,000 at issue; Defendant engaged in or carried out business in New Jersey, including the sale of the Policy, to a New Jersey resident.  There is a nexus between such business and this

action as Defendant engaged in, and continues to engage in, substantial business activity in New Jersey.

3.    Venue is proper in this Court under R. 4:3-2 (a)(3) because Count Basie has its principal place of business in Red Bank, Monmouth County, New Jersey.

## THE INSURANCE POLICY

4.    Zurich issued a Commercial Insurance Policy to Count Basie, Policy No. CPO 0210427-03 for Policy Period 11/1/2019 to 11/1/2020 (the "*Policy*").

5.    The named insureds under the Policy are Count Basie Theatre Inc., Monmouth Conservatory of Music and Trebies, Inc.

6.    The Policy contains a Schedule of Locations for properties insured under the Policy as follows:

| Loc. No. 001 | 97-11 Monmouth Street, Red Bank, New Jersey 07701 |
|---|---|
| Loc. No. 002 | 117 Monmouth Street, Red Bank, New Jersey 07701 |
| Loc. No. 004 | 65 Chestnut Street, Red Bank, New Jersey 07701 |
| Loc. No. 005 | 90 Monmouth Street, Red Bank, New Jersey 07701 |
| Loc. No. 006 | 54 Maple Street, Red Bank, New Jersey 07701 |
| Loc. No. 007 | 84 Maple Avenue, Red Bank, New Jersey  07701 |

7.    At Location 1, Count Basie operates its landmark theatre which features prominent recording artists as well as charity events. Prior to the COVID-19 pandemic, the Count Basie Theatre was the #1 seated venue in the State of New Jersey with over 225,000 patrons attending events annually.

8.    Location 2 is a garage which is leased by Plaintiff.

2

9.      Location 4 is a conservatory serving 200 students and offers music programs for beginners to advance musicians.

10.     Location 5 is a lot used for valet parking for patrons attending the theatre.

11.     Location 6 is a driveway in the back of the theatre.

12.     Location 7 is a lot used for valet parking for patrons attending the theatre.

13.     The Policy contains a Commercial Property Coverage Part Declarations (the "*Declarations*"). The Declarations sets forth the coverages provided under the Policy and the limits of coverage provided.

14.     The Declarations provides for business income Blanket Limit of Insurance in the amount of $1,900,001. This portion of the Declarations provides, "The above Limit of Insurance is the most we will pay in any one occurrence for all loss of '**business income**' at '**premises**' for which the Limit of Insurance is shown as Included in Blanket Limit of Insurance."

15.     The Declarations includes a Summary of Premises for Premises #1, located at 97-111 Monmouth Street, Red Bank, New Jersey 07701, Premises #2, located at 117 Monmouth Street, Red Bank, New Jersey 07701, and Premises #4, located at 65 Chestnut Street, Red Bank, New Jersey 07701.

16.     For each of the Premises #1, #2 and #4, the Declarations provides business income coverage which is "INCLUDED IN BLANKET LIMIT OF INSURANCE."

17.     The properties listed in the Summary of Premises, being Premises #1 at 97-11 Monmouth Street, Red Bank, New Jersey 07701, Premises #2 at 117 Monmouth Street, Red Bank, New Jersey 07701 and Premises #4 at 65 Chestnut Street, Red Bank, New Jersey 07701 are "**Premises**" which are defined as "a location scheduled on the Declarations for this Commercial Property Coverage Part."

3

18.     The properties located at Location #5, at 90 Monmouth Street, Red Bank, New

Jersey 07701, Location #6 at 54 Maple Street, Red Bank, New Jersey 07701 and Location #7 at

84 Maple Avenue, Red Bank, New Jersey 07701 are "**reported unscheduled premises**" as defined

in the Policy.

19.     The Policy is an "all risks" contract of insurance pursuant to which Zurich

promised, in return for the payment of substantial annual premiums, to protect Count Basie from

losses and catastrophes, including the interruption or closure of its business operations due to the

physical loss of use, loss of functionality, or loss of access to its respective properties.

## COMMUNICABLE DISEASE BUSINESS INCOME COVERAGE

20.     In addition, the Policy provides numerous Additional Coverages which are set forth

in the Declarations.  One Additional Coverage provided under the Policy is Historic Properties

Additional Coverage.

21.     Under the Historic Properties Additional Coverage, Section B, Additional

Coverages, in the BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA

EXPENSE) is modified to include "**Communicable Disease Suspension of Operations –**

**Business Income**" (the "*Communicable Disease Business Income Coverage*").

22.     The Communicable Disease Business Income Coverage provides:

> If the **Business Income Coverage Form (Excluding Extra
> Expense)** is included in this Commercial Property Coverage Part,
> the coverage provided at a '**premises**' or '**reported unscheduled
> premises**' will also cover the actual loss of '**business income**' you
> sustain resulting from the necessary '**suspension**' of your
> '**operations**' if the '**suspension**' is caused by an order of an
> authorized public health official or governmental authority that
> prohibits access to the '**premises**' or '**reported unscheduled
> premises**', or a portion of that '**premises**' or '**reported
> unscheduled premises**.'  That order must result from the discovery
> or suspicion of a communicable disease or threat of the spread of a

4

communicable disease at that '**premises**' or '**reported unscheduled premises.**'

Coverage provided applies only to the actual loss of '**business income**' you sustain beginning 24 hours after you receive notice of an order by an authorized public health official or governmental authority that results in the necessary '**suspension**' of your '**operations.**' The coverage provided ends when an authorized public health official or governmental authority authorizes you to resume normal '**operations**' or after 90 days, whichever is earlier.

The most we will pay under this Additional Coverage at any one '**premises**' or '**reported unscheduled premises**' is the Limit of Insurance shown on the Declarations for Communicable Disease Suspension of Operations – Business Income.

This Limit for this Additional Coverage is included in, and not in addition to, any other Limits of Insurance.

23.     Premises #1, Premises #2 and Premises #4 are all "**premises**" to which the Communicable Disease Business Income Coverage applies.

24.     Locations #5, #6 and #7 are all "**reported unscheduled premises**" to which the Communicable Disease Business Income Coverage applies.

25.     There is no requirement that the Insured show a direct physical loss or damage to insured property in order to trigger the Communicable Disease Business Income Coverage. Rather, the coverage is triggered by an order of an authorized public health official or governmental authority which prohibits access to the "**premises**" or "**reported unscheduled premises**" which order results from the discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at that "**premises**" or "**reported unscheduled premises.**"

*New Jersey's Executive Order Shutdown*

26.     The Communicable Disease Business Income Coverage has been triggered by the issuance of a series of Executive Orders by Governor Murphy which have prohibited access to the "**premises**" and "**reported unscheduled premises**", which Orders resulted from the discovery or

5

suspicion of a communicable disease, COVID-19, or threat of the spread of the communicable disease at those "**premises**" or "**reported unscheduled premises**."

27.    On March 9, 2020, New Jersey Governor Philip D. Murphy issued Executive Order No. 103, which provided in part:

> I authorize and empower the State Director of Emergency Management, who is the Superintendent of State Police, in conjunction with the Commissioner of DOH, *to take any such emergency measures as the State Director may determine necessary*, including the implementation of the State Emergency Operations Plan and directing the activation of county and municipal emergency operations plans, in order to *fully and adequately protect the health, safety and welfare* of the citizens of the State of new Jersey *from any actual or potential threat or danger that may exist from the possible exposure* to COVID-19.

Executive Order No. 103, March 9, 2020.  (Emphasis added.)

28.    Thus, Executive order No. 103 recognizes that there was, as of March 9, 2020, an "actual" or a "potential" threat that existed from the "possible exposure" to the communicable disease known as COVID-19 that is caused by contamination and / or infection from the Coronavirus.

29.    Executive Orders signed by Governor Murphy after March 9, 2020 closed all non-essential for-profit and non-profit businesses in New Jersey.  Those Executive Orders required the closing of the Count Basie properties.

30.    In accordance with his authority, on March 16, 2020 Governor Murphy issued Executive Order No. 104.  This Order closed the Insured's facilities effective 8:00 p.m. on Monday, March 16, 2020.  This Order triggered the Communicable Disease Business Income Coverage effective March 17, 2020 (24 hours after receipt of notice of Executive Order No. 104). It also triggered coverage for Count Basie's resulting business income loss under the Business Income Coverage and the Additional Coverage of Civil Authority.

6

31.     The Communicable Disease Business Income Coverage ends when an authorized public health official or governmental authority authorizes the Insured to resume normal "**operations**", or after 90 days, whichever is earlier.

32.     As of the date of the filing of this Complaint, Count Basie has not been authorized by public health officials or governmental authority to resume its normal "**operations.**"   In October, 2020 Count Basie was allowed to open the theatre on a limited and restricted basis.

33.     On April 7, 2020, Governor Murphy issued Executive Order No. 119.  This Order extended the state of emergency and public health emergency for an additional 30-day period through May 6, 2020.  Pursuant to Executive Order No. 119, Executive Order No. 104, which shut down the Insured's businesses, was extended and remained in full force and effect.

34.     On May 6, 2020, Governor Murphy issued Executive Order No. 138 which extended the state of emergency and public health emergency for an additional 30 days through June 4, 2020.  Pursuant to this Order, Executive Order No. 104, which shut down the Insured's businesses, was extended and remained in full force and effect.

35.     On June 4, 2020, Governor Murphy issued Executive Order No. 151 which extended the state of emergency and public health emergency for an additional 30 days through July 4, 2020.  In the Order, Executive Order No. 104, which shut down the Insured's businesses, was extended and remained in full force and effect.

36.     The above Executive Orders prohibited access to the Insured's "**premises**" or "**reported unscheduled premises**."  This caused Count Basie to sustain a business income loss which continued for more than 90 days after the issuance of Executive Order No. 104 which shut down the Insured's business effective March 16, 2020.

7

37.     Count Basie is covered under the Communicable Disease Business Income Coverage for its business income loss it sustained commencing March 17, 2020 and ending June 15, 2020.

38.     Zurich has acknowledged that there is coverage for Count Basie's business income losses under the Communicable Disease Business Coverage.  However, it has wrongfully capped the Insured's business income losses in the amount of $100,000 when Count Basie is entitled to recover the full blanket limits of business income coverage in the amount of $1,900,001.

39.     Each Executive Order shutting down Count Basie's business operations constitutes a separate occurrence triggering the full occurrence limits for business income loss at each insured location under the Communicable Disease Business Income Coverage, subject to the Blanket Limit of Insurance for business income loss at insured "**premises**."

40.     Under the Declarations, the coverage for business income loss under the Communicable Disease Business Income Coverage at a "**premises**" is "INCLUDED IN BLANKET LIMIT OF INSURANCE", which is the amount of $1,900,001.

41.     One page of the Declarations lists the amount of coverage for the Communicable Disease Business Income Coverage in the amount of $100,000 per occurrence.

42.     However, the same page of the Declarations modifies this provision as it relates to "**premises**" and provides:

> Limits of Insurance applicable at a '**premises**' that differ from those indicated below will be shown under the Summary of Premises section of this Declarations for that '**premises**.'  Those Limits of Insurance replace, and are not in addition to, the Limits of Insurance shown below for those specified coverages and '**premises**.'  If any Additional Coverages do not apply at any specific '**premises**', the Limit of Insurance will show as Not Covered for those '**premises**.'  If a specific coverage is shown at a '**premises**' as 'Included in Blanket Limit of Insurance', then that Blanket Limit of Insurance

8

replaces, and is not in addition to, the Limits of Insurance shown below for that coverage.

43.     Premises #1, Premises #2 and Premises #4 are all listed on the Summary of Premises section of the Declarations. For each of these "**premises**" in each of the Summary of Premises, the limits of coverage for business income is "INCLUDED IN BLANKET LIMIT OF INSURANCE."

44.     The $100,000 per occurrence limit for business income under the Communicable Disease Business Income Coverage listed on the Declarations differs from the limits of business income coverage provided for Premises #1, Premises #2 and Premises #4 under the Summary of Premises section of the Declarations for those "**premises**."

45.     As the business income coverage in the Summary of Premises for Premises #1, Premises #2 and Premises #4 is "INCLUDED IN BLANKET LIMIT OF INSURANCE", which is the amount of $1,900,001, and as this amount differs from the $100,000 per occurrence limit shown on the Declarations for business income under the Communicable Disease Business Income Coverage, "then that Blanket Limit of Insurance [$1,900,001] replaces, and is not in addition to, the Limits of Insurance shown below [$100,000 per occurrence] for that coverage."

46.     The limits for business income loss under the Communicable Disease Business Income Coverage are not on an aggregate basis. Rather the Policy provides that the most Zurich shall pay "at any one '**premises**' or '**reported unscheduled premises**'" is the limits shown in the Declarations. Thus there is coverage for business income loss at each insured location for the limits shown in the Declarations.

47.     For its business income loss under the Communicable Disease Business Income Coverage at Premises #1, Premises #2 and Premises #4, the Blanket Limit of Insurance in the amount of $1,900,001 applies. Count Basie's business income loss at these "**premises**" has

9

exceeded the Blanket Limits of $1,900,001 and it is entitled to recover the full Blanket Limit of Insurance for its business income loss at these "**premises**."

48.     For any business income loss caused by Communicable Disease Suspension of Operations at Locations #5, #6 and #7, as listed in the Schedule of Locations, there is coverage in the amount of $100,000 per occurrence at each "**reported unscheduled premises**."

49.     Count Basie has suffered business income loss at Locations no. 5, no. 6 and no. 7 which is covered up to the $100,000 per occurrence limits at each of these "**reported unscheduled premises**."

50.     Count Basie is entitled to recover up to the limits of coverage provided for the Communicable Disease Business Income Coverage for its business income loss at each insured "**premises**" and "**reported unscheduled premises**" locations.

## COVERAGE UNDER THE BUSINESS INCOME COVERAGE FORM

51.     The Policy further provides coverage under a standard Business Income Coverage Form (Excluding Extra Expense) (the "*Business Income Coverage*").

52.     The Business Income Coverage provides:

> We will pay for the actual loss of '**business income**' you sustain due to the necessary '**suspension**' of your '**operations**' during the 'period of restoration.' The '**suspension**' must be caused by direct physical loss of or damage to property at a '**premises**' at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a '**covered cause of loss**.' We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that '**premises**.'

53.     "**Business Income**" means:  (a) "Net Income" (net profit or loss before taxes); plus (b) "Continuing Expenses" (normal operating expenses including payroll).

54.     "**Suspension**" means the slow down or cessation of the Insured's business activities.

55.     "**Operations**" means the Insured's business activities occurring at the covered location prior to the physical loss or damage.

56.     "**Covered Cause of Loss**" means a fortuitous cause or event, not otherwise excluded, which actually occurs during the Policy period.

57.     The Policy is written on standard forms that were drafted by an insurance industry trade association known as the Insurance Services Office ("*ISO*").

58.     ISO drafts standard insurance forms that are then used nationwide by insurers such as Zurich and issued to their policyholders, including Count Basie, on a take-it-or-leave-it basis.

59.     The 2019-2020 Coronavirus pandemic has caused substantial physical loss of and / or damage to property throughout the world, including to the Insured's properties. This physical loss of or damage to Count Basie's properties triggered certain coverages under the Policy, including coverage under the Business Income Coverage and the Additional Coverage for Civil Authority.

60.     The Coronavirus is highly contagious and is transmitted through the airborne inhalation of aerosolized virus spores that are 0.125 microns in diameter.

61.     Infection with the Coronavirus can cause a suite of serious respiratory, circulatory, and neurological maladies known as COVID-19.

62.     According to the World Health Organization ("*WHO*"), the Coronavirus "spreads primarily from person to person through small droplets from the nose or mouth, which are expelled when a person with COVID-19 coughs, sneezes, or speaks...People can catch COVID-19 if they breathe in these droplets from a person infected with the virus..."  World Health Organization,

*How   Does   COVID-19   Spread"*,   Q&A   on   coronaviruses   (COVID-19),
http://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-
a-detail/q-acoronaviruses."

63.   Also, according to WHO, "droplets can land on objects and surfaces around the
person such as tables, doorknobs and handrails.  People can become infected by touching these
objects or surfaces, then touching their eyes, nose or mouth."  Id.

64.   A team of researchers from UCLA, Princeton University, the National Institute of
Allergy and Infectious Diseases, and the Centers for Disease Control and Prevention ("*CDC*")
reported in the March 17, 2020 edition of the New England Journal of Medicine that the virus can
persist on plastic and stainless steel surfaces for up to seventy-two hours.  Neeltje van Doremalen,
*et al., Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1,* NEW ENG.
J. MED. (Mar. 17, 2020), http://www.nejm.org/doi/full/10.1056/NEJMc2004973.

65.   While scientists, doctors, epidemiologists, and virologists admit that there is much
about COVID-19 that is yet unknown, the pandemic has caused wide-spread illness and death
throughout the United States and the world.

66.   China, Italy, France, Spain and other countries have implemented the cleaning and
fumigating of public areas prior to allowing them to re-open due to the intrusion of the
Coronavirus.

67.   The CDC has issued guidelines for the cleaning and disinfecting of surfaces before
businesses should reopen to the public.  In accordance with the CDC guidance:

> Examples of frequently touched surfaces and objects that will need
> routine disinfection following reopening are:
>
> • tables,
>
> • doorknobs,

12

- light switches,

- countertops,

- handles,

- desks,

- phones,

- keyboards,

- toilets,

- faucets and sinks,

- gas pump handles,

- touch screens, and

- ATM machines.

http://ww.cdc.gov/coronavirus/2019-ncov/community/reopen-guidance.html

68.     With only one or two exceptions, the surfaces and objects listed in the CDC guidance are present at the Insured properties and will need to be cleaned and disinfected for the remediation and prevention of the spread of the Coronavirus before they may reopen to the public, and regularly for an unknown period after reopening.

69.     The term "direct physical loss of or damage to property" is not defined anywhere in the Policy.

70.     The failure to define what constitutes a direct physical loss of or damage to property creates an ambiguity which must be resolved in favor of coverage.

71.     The courts of New Jersey have had numerous opportunities to interpret the phrase "physical loss of or damage to" in the standard form coverage grant that appears in the Policies.

72.     For example, the Appellate Division has observed that, since the policy term "'physical' can mean more than material alteration or damage, it was incumbent on the insurer to

13

clearly and specifically rule out coverage in the circumstances where it was not to be provided." Customized Distribution Services v. Zurich Ins. Co., 373 N.J. Super. 480, 487-88, 862 A.2d 560 (App. Div. 2004), certify. denied, 183 N.J. 214, 871 A.2d 91 (2005).

73.     The Appellate Division has specifically found that the term "physical damage" as it appears in a commercial property policy is ambiguous: "The fact that the term 'physical damage' is capable of at least two different reasonable interpretations convinces us that it is ambiguous. And well-established precedent teaches that such an ambiguous provision must be construed favorably to the insured." Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co., 406 N.J. Super. 524, 541, 968 A.2d 724, 735 (App. Div. 2009).

74.     In connection with business interruption coverage of the kind at issue here, the Appellate Division has cited with approval decisions from other jurisdictions that have held that "'physical damage' is not restricted to the physical destruction or harm" but that the phrase also "includes loss of access, loss of use, and loss of functionality." Id. at 543, 968 A.2d at 736.

75.     A release of ammonia that caused the evacuation of a building for several days because it was unsafe has been held to have inflicted direct physical loss of or damage to the facility "because the ammonia physically rendered the facility unusable for a period of time." Gregory Packaging v. Travelers Property Casualty Co. of America, Civ. No. 2:12-CV-04418 (WHW) (CLW) (D.N.J. 2014).

76.     More recently a New Jersey trial court in Optical Services USA, et al. v. Franklin Mut. Ins. Co., BER-L-3682-20 (Aug. 13, 2020) rejected the insurer's argument that "there is a plain meaning of 'direct physical loss' and the closure of plaintiff's business does not qualify...for purposes of coverage", finding that "this is a blanket statement unsupported by any common law in the State of New Jersey or by a blanket review of the policy language."

77.     Thus, the phrase "physical loss of or damage to" covered property includes, under New Jersey law, "loss of access, loss of use, and loss of functionality."

78.     The Policy further provides: "'**Covered cause of loss**' means a fortuitous cause or event, not otherwise excluded, which actually occurs during the policy period."

79.     Accordingly, the Policy provides coverage to Count Basie for claims that involve the physical loss of, the loss of access to, the loss of use of, or the loss of functionality of its facilities, as long as an exclusion in coverage does not clearly and unambiguously apply to the circumstances of the loss.    There is no such exclusion in the Policy which clearly and unambiguously excludes coverage for Count Basie's business income loss.

80.     Numerous Executive Orders that have been signed by Governor Murphy have recognized that the Coronavirus contaminates surfaces within a building and that those surfaces must be cleaned and disinfected, both before any businesses may reopen and repeatedly during a work day after a business reopens.

81.     For example, Executive Order No. 122, issued on April 8, 2020 (Requirements for Operation of Essential Retail Businesses) provides that essential retail businesses "must adopt policies that include, at minimum, the following requirements:

> 1.h.    Require frequent sanitization of high-touch areas like restrooms, credit card machines, keypads, counters and shopping carts."

82.     Executive Order No. 122 further provides:

> 3.    Manufacturing businesses, warehousing businesses, and businesses engaged in essential construction projects must adopt policies that include, at minimum, the following requirements:
>
> k. Require frequent sanitization of high-touch areas like restrooms, breakrooms, equipment, and machinery.

83.     Executive Order No. 122 further provides:

5. [O]wners of buildings used for commercial, industrial or other enterprises, ..., shall adopt policies that, at minimum, implement the following cleaning protocols in areas where operations are conducted:

a. Clean and disinfect high-touch areas routinely in accordance with CDC guidelines, particularly in spaces that are accessible to staff, customers, tenants, or other individuals, and ensure cleaning procedures following a known or potential exposure in a facility are in compliance with CDC recommendations.

84.    Executive Order No. 125, issued on April 11, 2020 (Mitigation Requirements on

NJ Transit and restaurants) provides:

WHEREAS, in response to the current emergency, NJ TRANSIT has instituted enhanced cleaning regimens in stations including additional disinfecting of frequent customer touchpoints like ticket vending machines, handrails, and door handles.

85.    Executive Order No. 125 further provides:

NJ Transit has 'instituted enhanced cleaning efforts for vehicles across all its modes of transportation, including disinfecting vehicles every 24 hours, hard surface cleaning and disinfecting including handholds, arm rests, seating areas and restrooms.'

86.    Executive Order No. 125 further provides:

5.    All restaurants, cafeterias, dining establishments, and food courts, with or without a liquor license, all bars, and all other holders of a liquor license with retail consumption privileges that are continuing to offer food delivery and / or takeout services pursuant to Executive Order No. 107 (2020) ('food business'), must adopt policies that include, at minimum, the following requirements:

g. Require frequent sanitization of high-touch areas like credit card machines, keypads, and counters to which the public and workers have access.

87.    In short, Executive Orders and Executive Directives issued by the State of New

Jersey recognize that the Coronavirus causes physical damage to inanimate objects and surfaces

within buildings by contaminating those surfaces in a manner that transmits COVID-19.

16

88.     A virus causes "physical loss of or damage to" property even though it is invisible to the naked eye. The airspace within the Insured's buildings constitutes property which has been damaged by the presence of the Coronavirus. Coronavirus contamination of property is just as dangerous as, if not more dangerous than, the impact on property from fire or fumes or vapors, and all such damaged property is rendered lost and incapable of producing revenues.

89.     The Coronavirus has actually been present in the Insured's premises with confirmed diagnoses of COVID-19 of persons who were present at the Insured's property.

90.     Count Basie has suffered an actual business income loss as a result of the suspension of its operations caused by direct physical loss of or damage to its property caused by a covered cause of loss. Its business income loss exceeds $1,900,001 and it is therefore entitled to recover the full Blanket Limits of Insurance for its business income loss in the amount of $1,900,001 under the Business Income Coverage.

## CIVIL AUTHORITY COVERAGE

91.     In addition to the coverages discussed above, the Policy contains the Additional Coverage under the Business Income Coverage Form for "Civil Authority." This Additional Coverage for "Civil Authority" provides:

> We will pay for the actual loss of '**business income**' you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary '**suspension**', or delay in the start of your '**operations**' if the '**suspension**' or delay is caused by order of Civil Authority that prohibits access to the '**premises**' or '**reported unscheduled premises**.' That order must result from a Civil Authority's response to direct physical loss or damage to property located within one mile from the '**premises**' or '**reported unscheduled premises**' which sustains a '**business income**' loss. The loss or damage must be directly caused by a '**covered cause of loss**.'
>
> The most we will pay under this Additional Coverage is the Limit of Insurance shown on the Declarations for Business Income at the

17

'**premises**' or '**reported unscheduled premises**' where access was prohibited.

The limit for this Additional Coverage is included in, and not in addition to, the applicable Limit of Insurance.

92.     The Declarations page provides that the Limits of Coverage for the Additional Coverage of Civil Authority is 30 days for business income and 30 days for extra expense.

93.     Count Basie has sustained a business income loss and incurred extra expense costs for more than 30 days resulting from the suspension of its operations caused by the Executive Orders referenced above.  Those Executive Orders were issued in response to direct physical loss of or damage to property, including numerous restaurants, health facilities, retail establishments and other properties located within one mile from the Insured's "**premises**."

94.     Count Basie is entitled to recover under the Additional Coverage for Civil Authority for the actual loss of "**business income**" for 30 days in which its operations have been suspended as a result of the Orders of Civil Authority issued by the Governor's office.

95.     Count Basie is also entitled to recover under the Additional Coverage of Civil Authority for its Extra Expense incurred during the 30 days in which its operations have been suspended as a result of the Civil Authority Orders issued by the Governor's office.

## ZURICH'S WRONGFUL DENIAL OF COUNT BASIE'S CLAIMS FOR COVERAGE

96.     Zurich has wrongfully failed or refused to provide coverage to Count Basie which is provided under the Policy.

97.     Count Basie provided Zurich with a Notice of Claim and Demand for Coverage seeking coverage under the Business Interruption Coverage and all Additional Coverages which may provide coverage for the losses sustained by Count Basie resulting from the shutdown of its business due to the COVID-19 pandemic.

18

98.     In response, on May 1, 2020 Zurich sent a coverage letter in which it denied Count

Basie's claims for coverage other than under the Communicable Disease Business Income

Coverage (the "*Wrongful Denial Letter*"). In the Wrongful Denial Letter, Zurich acknowledged

that, "We have determined that coverage is available under Form PPP-0419." Form PPP-0419 is

the form which provides the Communicable Disease Business Income Coverage.

99.     Although the limits of coverage for the business income loss sustained under the

Communicable Disease Business Income Coverage at its "**premises**" is the Blanket Limits of

Coverage in the amount of $1,900,001, and even though Count Basie's business income loss has

exceeded that amount, Zurich wrongfully took the position that Count Basie's coverage was

limited to $100,000 and issued a check to Count Basie only in the amount of $100,000.

100.    In the Wrongful Denial Letter, Zurich stated that there was no presence of COVID-

19 at any of the loss locations. Not only was this statement inaccurate, but it was irrelevant as the

Policy does not require the presence of COVID-19 at any of the loss locations in order for there to

be a direct physical loss of use or damage to the property. In any event, there was actually the

presence of COVID-19 at the Insured's properties.

101.    In the Wrongful Denial Letter, Zurich maintained that there was no direct physical

loss of or damage to property at the Insured Premises. Zurich maintained that the presence of the

COVID-19 virus does not constitute "direct physical loss or damage" to property.

102.    However, the Executive orders and Directives issued by the State of New Jersey,

as set forth above, recognize that the Coronavirus damages objects, surfaces and airspace within

buildings and that this contamination, in part, is the reason the shutdown has been ordered.

Cleaning and disinfecting those objects and surfaces are prerequisites to reopening and to staying

open.

103.    In addition, Zurich's position is contrary to the coverage grant of the Policy, which provides that the Insurers will pay "for physical *loss of __or__* damage to" the Insured Property.

104.    The use of the disjunctive means that the "loss of" Insured Property must, therefore, mean something different from "damage to" Insured Property.

105.    Although Count Basie needs only to show it has sustained either a physical loss of or damage to its property under the Business Income Coverage and Civil Authority Coverage, Count Basie has suffered both.

106.    When the State government orders an insured to close down its property, making it unavailable for any of the purposes for which the property is intended, this constitutes the "physical loss of" such property.

107.    Moreover, as discussed above, the Policy does not define the term "physical loss of or damage to property" and the New Jersey Appellate Division has found that the undefined phrase "physical damage" when used in an insurance policy is ambiguous.  Under well-settled New Jersey law, an ambiguous word or phrase in an insurance policy must be construed against the insurer and in favor of coverage.

108.    In addition, as discussed above, it is the law of New Jersey that the phrase "physical loss of or damage to" insured property can mean "loss of use, loss of access, and loss of functionality" of such property.  All of these phrases apply to the loss of the Insured Property as a result of the Executive Order shutdown.

109.    As persons with confirmed diagnoses of COVID-19 accessed the Insured Property, the Coronavirus was physically present in the properties, causing damage to property.

110.    Count Basie has suffered a business income loss resulting from physical loss of or damage to Insured Property which is covered under the Business Income Coverage and Civil Authority Coverage but which Zurich has wrongfully denied.

111.    In addition, in the Wrongful Denial Letter, Zurich denied coverage under the Business Income Coverage and Civil Authority Coverage on the basis of the exclusion for "**microorganisms**" in Section 12 of Form PPP-0110. Zurich wrongfully maintained the position that any alleged damage to the Insured is a result of the presence of the COVID-19 virus which is excluded under the "**microorganisms**" exclusion.

112.    In the Policy, Zurich has not attempted to exclude coverage for business income loss under the Business Income and Civil Authority Coverages caused by a virus in plain, easily read and understandable language.

113.    In the Business Income Coverage Form, there is no express virus exclusion. Nowhere in this coverage form does the word virus appear and nowhere in this coverage form is there any express exclusion for business income loss caused by a virus.

114.    The Exclusions section of the Business Income Coverage Form lists specific exclusions which apply to the coverage, none of which are for loss caused by virus.

115.    The Exclusions section of the Business Income Coverage Form states that certain of the exclusions in the REAL AND PERSONAL PROPERTY COVERAGE FORM apply to loss of "**business income.**" In order for an inexperienced and unsophisticated insured to understand what is excluded in the Business Income Coverage Form, the insured must navigate to a separate section of the Policy that does not relate to a business income loss, but rather which deals with real and personal property.

116.   As with the Business Income Coverage Form, the word virus does not appear anywhere in the Real and Personal Property Coverage Form.  Nowhere in this form does it expressly state "There is no coverage under this Form for loss caused by virus" or other similar clear and unequivocal words expressing an intent to exclude loss caused by virus.

117.   Instead, the Real and Personal Property Coverage Form has an exclusion for "**microorganisms**."  A reasonably objective person reviewing the "**microorganisms**" exclusion would not understand that it excludes coverage for loss caused by virus since the form itself does not use the word virus and since a virus is not a **microorganism**.

118.   A virus is generally not considered to be a microorganism.  "In fact, viruses should not ever be considered organisms, in the strictest sense, because they are not free-living, i.e., they cannot reproduce and carry on metabolic processes without a host cell." http://www.britannica.com/science/virus.

119.   "Viruses are not typically considered to be organisms because they are incapable of autonomous reproduction, growth or metabolism."  http://en.wikipedia.org/wiki/organsim.

120.   A reasonable insured reading the exclusion in the Real and Personal Property Coverage Form for "**microorganism**" would not understand nor reasonably expect this exclusion to apply to loss caused by virus since a virus is not a microorganism.

121.   Nonetheless, in a Policy form separate from both the Business Income Coverage Form and separate from the Real and Personal Property Form, Zurich defines "**microorganism**" as "any type or form of organism of microscopic size, including but not limited to '**fungus**', wet or dry rot, virus, algae or bacteria, or any by-product."

122.   This definition of "**microorganism**" is internally inconsistent and therefore ambiguous.  It applies only to an "organism of microscopic size."  This does not include a virus

22

since a virus is not an organism. Yet, although the definition of "**microorganism**" means only an organism, and even though a virus is not an organism, Zurich includes a non-organism virus as an organism in the definition.

123.    The microorganism exclusion is further ambiguous because the Business Income Coverage Form provides Additional Coverage for loss of business income caused by "**microorganism**." If the "**microorganism**" exclusion applied to the Business Income Coverage Form, the Additional Coverage for "**microorganism**" would be excluded by the "**microorganism**" exclusion rendering the coverage illusory. This would be akin to a fire policy containing an exclusion for loss caused by fire.

124.    In order to exclude coverage, an insurer must do so in clear and unmistakable language which is free from ambiguity and consistent with an insured's reasonable expectation. Had Zurich intended in the Business Income Coverage Form to exclude coverage for virus, it could have done so using clear and unequivocal language approved by ISO and used by other insurers.

125.    In 2006 ISO approved an exclusion encaptioned, "Exclusion of Loss Due to Virus or Bacteria." That form expressly states, "We will not pay for any loss or damage caused by or resulting from a 'virus.'"

126.    Zurich elected not to use this ISO approved from commonly used in property policies which would have clearly expressed an intent to exclude loss caused by virus. Instead it chose to use an internally inconsistent, ambiguous microorganism exclusion to exclude loss caused by virus, when a virus is not even a microorganism.

127.    The **microorganism** exclusion is invalid and unenforceable to exclude loss caused by a virus since: (1) a virus is not a microorganism; (2) a reasonably objective insured reading a microorganism exclusion would not expect that it would exclude loss caused by virus when a virus

23

is not a microorganism; (3) Zurich cannot make a virus a microorganism by defining it as a microorganism when it is not; (4) the exclusion is ambiguous by limiting its applicability to organisms but including as an organism a non-organism virus; (5) an inexperienced and unsophisticated insured reading the Business Income Coverage Form cannot determine from that form Zurich's well-hidden intent to exclude loss caused by virus since the word virus does not appear in the Form, and its review of the separate Real and Personal Property Form would show only an exclusion for **microorganism**, which is not a virus; and (6) application of the **microorganism** exclusion to the Business Income Coverage Form would exclude the Additional Coverage for loss caused by **microorganisms** which is included in the Form rendering the coverage illusory.

128.    In response to the Wrongful Denial Letter, Count Basie sent a letter dated June 18, 2020 to the Internal Appeals Administrator at Zurich. In the letter Count Basie noted at the outset that in the Wrongful Denial Letter Zurich erroneously stated its understanding that Count Basie was seeking coverage only under the Civil Authority Coverage provided in the Policy. Zurich was advised in the letter that Count Basie's claim for coverage was made under the Business Interruption Coverage and all Additional Coverages which may provide coverage for its losses resulting from the shutdown of its business due to the COVID-19 pandemic.

129.    In addition, in the June 1, 2020 letter, Count Basie advised Zurich that it improperly limited the business income loss under the Communicable Disease Business Income Coverage to the amount of $100,000.

130.    As discussed above, the limit of insurance for a business income loss at a **"premises"** under the Communicable Disease Business Income Coverage Form is the blanket limits of coverage in the amount of $1,900,001.

131.    In the June 18, 2020 letter Count Basie advised Zurich that its conclusion in the Wrongful Denial Letter that there is only $100,000 of coverage available to Count Basie under Form PPP-0419 was erroneous as the limits of coverage applied to each occurrence at each insured location.

132.    In the June 18, 2020 letter, Count Basie explained that each of the Executive Orders were separate occurrences which triggered the coverage under the Business Income Coverage for a period of 90 days from the issuance of the Orders.

133.    Thus, Executive Order No. 104 issued on March 16, 2020 triggered coverage under the Business Income Coverage for a period of 90 days form the issuance of the Order.

134.    Likewise, the Executive Orders issued on April 7, 2020 (Executive Order No. 119), May 6, 2020 (Executive Order No. 138) and June 4, 2020 (Executive Order No. 151) triggered the coverage under the Business Income Coverage for a period of 90 days from the issuance of the respective Executive Orders.

135.    Additional Executive Orders issued since that time which continue to prevent Count Basie from operating its business at the insured properties and have triggered the coverage under the Business Income Coverage for a period of 90 days from the issuance of the respective Executive Orders.

136.    Although Zurich was fully aware that Count Basie's operations had been shut down as a result of the Executive Orders, and that it was receiving no income while continuing to incur operational expenses, it did not respond to the June 18, 2020 letter until five weeks later on July 21, 2020.

137.    In the July 21, 2020 letter, Zurich failed to provide a meaningful substantive response to the issues raised in Count Basie's June 18, 2020 letter.

25

138.    In response to the Insured's position that the Communicable Disease Business Income Coverage provides business income up to the Policy limits at each insured location, Zurich simply responded, "In regards to the occurrence as opposed to the per location application of the limits, it is respectfully our position that there is one occurrence." It failed to explain why it applied an aggregate limit of $100,000 for all business income loss when the Declarations provides coverage on a per occurrence basis. Nor did it explain why the per occurrence limits did not apply to each insured location when the Policy expressly provides "The most we will pay under this Additional Coverage at any one "premises" or "reported unscheduled premises" is the limits of coverage shown on the Declarations (emphasis added).

139.    In the July 21, 2020 letter, Zurich denied coverage under the Additional Coverage for **Microorganisms**. One of the reasons stated for its position that there is no coverage under the **Microorganism** Additional Coverage is because of the exclusions set forth in the Real and Personal Property Coverage Form. While not citing any particular exclusion, the import of this statement is that the **microorganism** exclusion bars coverage under the **Microorganism** Additional Coverage. This further establishes that the exclusion is not enforceable as it renders illusory one of the Additional Coverages provided in the Policy.

140.    With regard to Count Basie's position that there is coverage for business income loss at each location up to the Policy limits for each occurrence, Zurich stated, "This limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance." (Emphasis supplied)

141.    Zurich maintained that because of this sentence, it only had to pay a total of $100,000 under the Communicable Disease Business Income Coverage.

26

142.    In making this determination, Zurich cited to only a portion of the Declarations page which stated that the limits of coverage for Communicable Disease Suspension of Operations was $100,000 per occurrence.  Zurich did not cite to the remaining provision in the Declarations which modified this limit of coverage to be the Blanket Limit of Insurance.  As noted above, the Declarations provides that because the Schedule of Premises for Premises #1, Premises #2 and Premises #4 provide for Blanket Limits of Insurance for business income loss, those limits of insurance replace, and are not in addition to, the limits of insurance shown below in the Declarations, of $100,000 per occurrence for Communicable Disease Suspension of Operations.

143.    On July 29, 2020, Count Basie responded to Zurich's July 21, 2020 letter.  Count Basie advised that Zurich's reliance on the single sentence, "This Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance", to support the position that it owed only a total of $100,000, was erroneous.

144.    That language means only that the limits of coverage provided in the Communicable Disease Business Income Coverage ($100,000) is included in, and not in addition to, the Blanket Limit of Insurance for Business Income coverage provided in the Policy ($1,900,001) which Blanket Limits of Coverage replaced the $100,000 limit for business income loss.

145.    In the July 29, 2020 letter, Count Basie further explained that Zurich's position limiting the total business income loss under the Communicable Disease Business Income Coverage to $100,000 was erroneous.  In the letter Count Basie explained how the $100,000 per occurrence limits listed in the Declarations were modified by other language on the same Declarations page which expressly provided that those Limits of Coverage were replaced by the Blanket Limit of Insurance for business income loss listed on the Schedule of Premises for

27

Premises #1, Premises #2 and Premises #4. Count Basie attached the relevant and controlling Declarations pages to the July 29, 2020 letter.

146.    Despite having a good faith obligation to provide a reasonable explanation of the basis in the Policy in relation to the facts for the denial of a claim, on August 6, 2020, Zurich sent a two-sentence email to Count Basie's counsel stating, "I respectfully disagree with your position in both of your letters dated June 18, 2020 and July 29, 2020." This was the totality of Zurich's coverage analysis.

147.    On August 14, 2020, Count Basie responded to Zurich's August 6, 2020 email advising that the position taken by Zurich in the letter, and its claims handling to date, was in violation of New Jersey's Unfair Claims Settlement Practices Act, N.J.S.A. 17:29B-4(9) which declares New Jersey State policy regarding settlement of claims as set forth by the New Jersey Supreme Court in Pickett v. Lloyds, 131 N.J. 457, 468 (1993). Zurich was advised that its two-sentence August 26, 2020 email was an egregious violation of its obligations under the Unfair Claims Settlement Practices Act and constituted bad faith.

148.    Although in its July 29, 2020 letter Count Basie explained its position that it is entitled to the Blanket Limits under the Communicable Disease Business Income Coverage in the amount of $1,900,001 as a result of the express language in the Declarations page, which modified the $100,000 per occurrence limits under the Communicable Disease Business Income Coverage and replaced it with the Blanket Limits of Coverage for Premises #1, Premises #2 and Premises #4, Zurich failed to address this position in any of its correspondence with the Insured.

149.    In the August 14, 2020 letter, Count Basie further detailed Zurich's bad faith handling of the Insured's claim since the inception of the claim. These bad faith actions,

committed in violation of the Unfair Claims Settlement Practices Act, N.J.S.A. 17:29B-4(9)(n)

and N.J.A.C. 11:25-2.3 and 2.4, include but are not limited to:

- Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

- Failing to acknowledge and act reasonably promptly upon communications with respect to the claims arising under the Policy;

- Failing to adopt and implement reasonable standards for prompt investigation of the Insured's claims;

- Refusing to pay the Insured's claim without conducting a reasonable investigation based upon all available information;

- Not attempting in good faith to effectuate prompt, fair and equitable settlement of the Insured's claim when liability has become reasonably clear;

- Failing to promptly provide a reasonable explanation of the basis in the insurance Policy in relation to the facts or applicable law for a denial of the Insured's claim or for the offer of a compromise settlement;

- Failing to conduct a review of the Insured's disputed claim in accordance with the required internal appeals procedure;

- Allowing Peter Hogan, the Commercial Property Claims Manager, responsible for claims payment on a day-to-day basis, to conduct the internal review rather than a panel of at least three of the Insurer's employees who are not assigned to day-to-day claims payment and adjustment;

- Failing to respond within ten business days from receipt of the appeal.

150.    In the letter Zurich was urged to treat the matter with the seriousness it deserves and the good faith it requires.  It failed to do so.

151.    Instead, on September 2, 2020 Zurich sent Count Basie a letter stating that its New Jersey appeal panel found no disagreement with the coverage determination and referred Count Basie to the portion of the Declarations page which had a limit of $100,000 per occurrence.

152.    In the September 2, 2020 letter, as in all of its earlier communications, Zurich has failed to respond to Count Basie's repeatedly-expressed position that the portion of the

29

Declarations page relied upon by Zurich limiting the business income coverage to $100,000 per occurrence was replaced by the other language on the same Declarations page which modified those limits and replaced it with the Blanket Limits of Insurance in the amount of $1,900,001.

153.    To this day Zurich has failed to address this issue and has wrongfully refused to pay Count Basie more than $100,000 under the Communicable Disease Business Income Coverage.  It has failed to pay Count Basie anything under the Business Income Coverage or the Additional Coverage for Civil Authority.

## COUNT ONE

### (Declaratory Judgment)

154.    Plaintiff repeats and adopts and incorporates as if set forth at length herein the allegations in paragraphs 1 through 152 above.

155.    As a result of the foregoing, there is an actual controversy between Plaintiff, on the one hand, and Defendant, on the other, as to the limits of coverage available to Plaintiff under the Communicable Disease Business Income Coverage.  Although Zurich has acknowledged that there is coverage for Count Basie's business income loss under the Communicable Disease Business Income Coverage, there is an actual controversy in dispute as to the limits of coverage to which Count Basie is entitled.

156.    Count Basie maintains that it has suffered a business income loss in excess of $1,900,001 and that it is entitled to recover under the Communicable Disease Business Income Coverage up to the Blanket Limits of Insurance in the amount of $1,900,001 for its business income losses at the insured "**premises**" at Premises #1, Premises #2 and Premises #4 and $100,000 per occurrence at each of Locations #5, #6 and #7. Zurich maintains that Count Basie

30

is entitled to recover only $100,000 in total for its business income loss under the Communicable Disease Business Income Coverage.

157.   Further, there is an actual controversy between Plaintiff, on the one hand, and Defendant, on the other hand, about whether Count Basie's business income losses are covered under the Business Income Coverage and the Additional Coverage of Civil Authority. Count Basie maintains that it is covered under the Business Income Coverage for its business income losses at Premises #1, Premises #2 and Premises #4 up to the Blanket Limits of Insurance of $1,900,001 and that it is covered for its business income losses and extra expenses at all of its insured properties under the Civil Authority coverage up to the Policy limits. Zurich maintains that there is no coverage for Count Basie under the Business Income Coverage or the Civil Authority Coverage.

158.   Because Zurich has paid Count Basie only $100,000 under the Communicable Disease Business Income Coverage and has failed to pay Count Basie anything for its business income losses under the Business Income Coverage and the Additional Coverage of Civil Authority, Count Basie seeks a judicial declaration of its rights under the Policy.

WHEREFORE, Count Basie demands judgment against Zurich as follows:

A.    For a declaration that Count Basie is covered under the Communicable Disease Business Income coverage for its business income losses at Premises #1, Premises #2 and Premises #4 up to the Blanket Limits of Insurance of $1,900,001;

B.    For a declaration that Count Basie is entitled to coverage under the Communicable Disease Business Income Coverage for its business income losses up to $100,000 for each occurrence at each of the insured "**premises**" and "**reported unscheduled premises**";

31

C.    For a declaration that the Policy provides coverage for Count Basie's business income loss under the Business Income Coverage up to the Blanket Limits of Insurance;

D.    For a declaration that the Policy provides Count Basie coverage for its business income loss under the Additional Coverage of Civil Authority up to the Policy limits;

E.    For a declaration that Zurich must immediately provide full coverage for all of the losses at issue in this action;

F.    For such other relief as the Court deems fair, equitable and just.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Michael J. Canning, Esq. is hereby designated as trial counsel.

## DEMAND FOR TRIAL BY JURY

**PLEASE TAKE NOTICE**, that Plaintiffs demand a trial of the issues by a jury of six.

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned herby certifies that this matter is not the subject of any other action pending in any court or arbitration proceeding, and no other action or arbitration proceeding is contemplated.  The undersigned hereby certifies that he knows of no other parties who should be joined in the action at this time.

## CERTIFICATION OF COMPLIANCE WITH R. 1:38-7(c)

I certify the Confidential Personal Identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

GIORDANO HALLERAN & CIESLA, P.C.
Attorneys for Plaintiff, Count Basie Theatre Inc.

Dated: December 3, 2020

MICHAEL J. CANNING

Docs #4756399-v1

33

# Civil Case Information Statement

**Case Details: MONMOUTH | Civil Part Docket# L-003895-20**

**Case Caption:** COUNT BASIE THEATRE,  INC.  VS
ZURICH AMERICAN IN

**Case Initiation Date:** 12/03/2020

**Attorney Name:** MICHAEL J CANNING

**Firm Name:** GIORDANO HALLERAN & CIESLA, PC

**Address:** 125 HALF MILE ROAD SUITE 300
RED BANK NJ 07701

**Phone:** 7327413900

**Name of Party:** PLAINTIFF : Count Basie Theatre, Inc.

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** OTHER INSURANCE CLAIM (INCLUDING
DECLARATORY JUDGMENT ACTIONS)

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Count Basie Theatre, Inc.?** NO

---

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

---

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

12/03/2020
Dated

/s/ MICHAEL J CANNING
Signed

MONMOUTH COUNTY
SUPERIOR COURT
PO BOX 1270
FREEHOLD          NJ 07728
                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (732) 358-8700
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   DECEMBER 03, 2020
                    RE:     COUNT BASIE THEATRE,  INC.  VS ZURICH AMERICAN IN
                    DOCKET: MON L -003895 20

    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 1.

    DISCOVERY IS   150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON KATHLEEN A. SHEEDY

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     003
AT:  (732) 358-8700 EXT 87871.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                          ATT: MICHAEL J. CANNING
                          GIORDANO HALLERAN & CIESLA, PC
                          125 HALF MILE ROAD SUITE 300
                          RED BANK        NJ 07701

ECOURTS