<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| COUNT BASIE THEATRE INC., | |
| Plaintiff, | Case No. 2:21-cv-00615 (BRM) (LDW) |
| v. | |
| ZURICH AMERICAN INSURANCE COMPANY, | **OPINION** |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Remand filed by Plaintiff Count Basie Theater, Inc. ("Count Basie"). (ECF No. 6.) Defendant Zurich American Insurance Company ("Zurich") opposed the motion. (ECF No. 15.) Count Basie filed a reply. (ECF No. 17.) Having reviewed the submissions filed in connection with the motion and having heard oral argument on April 7, 2021, pursuant to Federal Rule of Civil Procedure 78(a) (ECF No. 18),[1] for the reasons set forth below and for good cause appearing, Count Basie's Motion to Remand is **DENIED**.

**I.     BACKGROUND**

Count Basie owns, and/or operates out of, six insured premises in Red Bank, Monmouth County, New Jersey. (ECF No. 6-1 at 8.) Zurich is a commercial property and casualty insurance company, which issued a commercial package property insurance policy (the "Policy") to Count

---

[1] Following oral argument, the Court permitted simultaneous supplemental briefings, which were filed by Count Basie and Zurich on April 21, 2021. (ECF Nos. 21, 22.)

Basie for the period between November 1, 2019, and November 1, 2020. (*Id*.) The Policy contains

a Schedule of Locations for the six insured premises under the Policy. (*Id*. at 7.)

The Policy sets forth the Business Income Coverage, which provides:

> We will pay for the actual loss of "business income" you sustain due
> to the necessary "suspension" of your "operations" during the
> "period of restoration." The "suspension" must be caused by direct
> physical loss of or damage to property at a "premises" at which a
> Limit of Insurance is shown on the Declarations for Business
> Income. The loss or damage must be directly caused by a "covered
> cause of loss." We will not pay more than the applicable Limit of
> Insurance shown on the Declarations for Business Income at that
> "premises."

(ECF No. 5-1 at 10.) The Policy defines a "covered cause of loss" as "a fortuitous cause or event,

not otherwise excluded, which actually occurs during this policy period." (*Id*. at 11.) Apart from

the Business Income Coverage, the Policy contains additional coverages, and one of them is the

Civil Authority Coverage, which provides:

> We will pay for the actual loss of "business income" you sustain for
> up to the number of days shown on the Declarations for Civil
> Authority resulting from the necessary "suspension," or delay in the
> start, of your "operations" if the "suspension" or delay is caused by
> order of civil authority that prohibits access to the "premises" or
> "reported unscheduled premises." That order must result from a civil
> authority's response to direct physical loss of or damage to property
> located within one mile from the "premises" or "reported
> unscheduled premises" which sustains a "business income" loss.
> The loss or damage must be directly caused by a "covered cause of
> loss."

(*Id*.) Another additional coverage at issue here is the Communicable Disease Business Income

Coverage, which provides:

> If the Business Income Coverage Form (Excluding Extra Expense)
> is included in this Commercial Property Coverage Part, the coverage
> provided at a "premises" or "reported unscheduled premises" will
> also cover the actual loss of "business income" you sustain resulting
> from the necessary "suspension" of your "operations" if the
> "suspension" is caused by an order of an authorized public health

> official or governmental authority that prohibits access to the "premises" or "reported unscheduled premises," or a portion of that "premises" or "reported unscheduled premises." That order must result from the discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at that "premises" or "reported unscheduled premises."

(ECF No. 6-1 at 10–11.) The Policy considers microorganisms as "excluded causes of loss," and

has an exclusion provision (the "Microorganism Exclusion") that states:

> We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "microorganisms," unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a "mistake," "malfunction," or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

(ECF No. 5-1 at 12.) The Policy defines "microorganism" as "any type or form of organism of

microscopic or ultramicroscopic size including, but not limited to, 'fungus,' wet or dry rot, virus,

algae, or bacteria, or any by-product." (*Id*.)

In March 2020, Governor Philip D. Murphy of the State of New Jersey issued a series of

executive orders (the "Executive Orders"), which Count Basie alleges to have prohibited access to

its business facilities.[2] (ECF No. 6-1 at 12.) One Executive Order explains "suspending operations

at these businesses is part of the State's mitigation strategy to combat COVID-19 and reduce the

rate of community spread." (ECF No. 5-6 at 4.) Thereafter, Count Basie submitted a claim under

the Policy to Zurich for lost business income caused by its compliance with the Executive Orders.

---

[2] Zurich identifies only one Executive Order that closed Count Basie's business facilities. (ECF No. 5-1 at 13.) At this stage, the Court need not make, and is not making, a factual determination as to whether it was one or several Executive Orders that suspended Count Basie's business operations. Such a determination is essential here, because Count Basie alleges each Executive Order shutting down its business constitutes a separate occurrence that triggers the full occurrence limits for its business income loss, at each insured premise under the Communicable Disease Business Income Coverage. (ECF No. 1-1 ¶ 39.)

(ECF No. 5-1 at 13.) Zurich determined Count Basie was entitled to recover under the Communicable Disease Business Income Coverage, and issued payment in the amount of $100,000, allegedly representing the upper limit of the coverage. (*Id*.) Zurich also determined Count Basie was not entitled to coverage for its loss of business income under any other provision under the Policy. (*Id*.)

On December 3, 2020, Count Basie filed a Complaint in the Superior Court of New Jersey, Law Division, Monmouth County, against Zurich. (*Id*. at 14; ECF No. 6-1 at 7.) The Complaint seeks a declaratory judgment that Count Basie is entitled to recover: (1) under the Communicable Disease Business Income Coverage up to the Blanket Limits of Insurance in the amount of $1,900,001 for its business income losses at three insured premises, and $100,000 per occurrence at each of the other three insured premises, (2) under the Business Income Coverage for its business income losses at three insured premises up to the Blanket Limits of Insurance of $1,900,001, and (3) under the Civil Authority Coverage up to the Policy limits for its business income losses and extra expenses at all of its insured properties. (ECF No. 1-1 ¶¶ 156–57.)

On January 12, 2021, Zurich removed this case from the Superior Court of New Jersey, Law Division, Monmouth County, to the United States District Court for the District of New Jersey. (ECF No. 1.) On February 2, 2021, Zurich filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] (ECF No. 5.) On February 8, 2021, Count Basie filed a Motion to Remand this case back to the Superior Court of New Jersey, Law Division, Monmouth County. (ECF No. 6) On March 22, 2021, Zurich opposed Count Basie's motion. (ECF No. 15.) On March 31, 2021, Count Basie replied to Zurich's opposition. (ECF No. 17.) On April

---

[3] Zurich's Motion to Dismiss was stayed pending the Court's decision on Count Basie' Motion to Remand. (ECF No. 14.)

7, 2021, the Court held oral argument on Count Basie's motion (ECF No. 18), and permitted simultaneous supplemental briefings, which were filed on April 21, 2021 (ECF Nos. 21, 22).

## II.    LEGAL STANDARD

A district court has subject matter jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citations omitted). "28 U.S.C. § 1441 is to be strictly construed against removal." *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (citing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)).

"As a general rule, federal courts have a 'virtually unflagging obligation' to 'exercise jurisdiction given them,' and therefore, 'the pendency of an action in a state court is no bar to proceedings concerning the same matter in a Federal court having jurisdiction.'" *Hartford Life Ins. Co. v. Rosenfeld*, Civ. A. No. 05-5542, 2007 U.S. Dist. LEXIS 55819, at *8–9 (D.N.J. Aug. 1, 2007) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1983)). "Nevertheless, under certain circumstances, a district court may abstain from exercising jurisdiction in favor of state court proceedings." *Id.* at *9. (citing *NYLife Distrib., Inc. v. The Adherence Grp., Inc.*, 72 F.3d 371, 376 (3d Cir. 1995)). "Relevant here are two abstention doctrines that are 'aimed at avoiding duplicative litigation' and 'premised on considerations which concern the efficient administration of judicial resources and the comprehensive disposition of cases.'" *Id.* (quoting *NYLife Distrib.*, 72 F.3d at 376).

"First, *Colorado River* abstention permits a district court to decline jurisdiction where a parallel state court action is ongoing, and where 'exceptional circumstances' exist." *Id.* (citing *Colorado River*, 424 U.S. at 817–18); *see also Golden Gate Nat'l Senior Care, LLC v. Minich*, 629 F. App'x 348, 349 (3d Cir. 2015) ("*Colorado River* abstention provides that, under 'exceptional circumstances,' a federal court may abstain . . . jurisdiction over a case because (1) there is a parallel case in state court, and (2) . . . balancing [of] a series of factors [indicates] maintaining the federal case would be a waste of judicial resources." (citations omitted)).

> Second, under the *Brillhart* abstention doctrine, if the parallel claims sought to be dismissed or stayed seek relief under the Declaratory Judgment Act,[4] 28 U.S.C. § 2201(a), the district court is permitted to exercise greater discretion than is permitted under the exceptional circumstances test of *Colorado River* in determining whether to abstain.

*Hartford*, 2007 U.S. Dist. LEXIS 55819, at *9–10 (citations and internal quotation marks omitted); *see also Evanston Ins. Co. v. Van Syoc Chtd.*, 863 F. Supp. 2d 364, 367 (D.N.J. 2012) ("[A] federal district court's jurisdiction under the [DJA] is discretionary." (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942))). "The discretion courts exercise in actions seeking only declaratory relief is 'substantial' but nonetheless 'bounded and reviewable.'" *Kelly v. Maxum Specialty Ins. Corp.*, 868 F.3d 274, 282 (3d Cir. 2017) (quoting *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 140 (3d Cir. 2014)). In deciding whether to entertain a declaratory action, "[c]ourts should first determine whether there is a 'parallel state proceeding.'" *Id.* (quoting *Reifer*, 751 F.3d at 143, 146). "[T]he absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise." *Id.* (quoting *Reifer*, 751 F.3d at 144). "Courts should then weigh other factors." *Id.* "Specifically, if a state parallel

---

[4] Hereinafter, "DJA"

proceeding does not exist, then 'as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors.'" *Id.* (quoting *Reifer*, 751 F.3d at 144).

> Courts should give the following[5] and other factors "meaningful consideration . . . to the extent they are relevant:"
> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at 282–83 (quoting *Reifer*, 751 F.3d at 146).

## III.   DECISION

### A.   *Colorado River* Abstention Is Inapplicable

Count Basie argues the Court should grant remand under the exceptional circumstances test in *Colorado River*, because the issues raised in its insurance claims involve a once-in-a-lifetime pandemic. (ECF No. 17 at 12–13.) Count Basie maintains resolution of this case requires careful weighing of public policy in an area of state law that is unsettled and would have a far-reaching effect on in-state businesses. (*Id.* at 13.) Zurich counters *Colorado River* abstention does not apply, because a parallel state court proceeding does not exist. (ECF No. 21 at 7 n.2.) The Court agrees.

---

[5] The following eight factors are hereinafter referred to as "*Reifer* factors."

"The threshold question in" the *Colorado River* abstention inquiry "is whether there is a parallel state proceeding." *Yang v. Tsui*, 416 F.3d 199, 205 n.5 (3d Cir. 2005) (citing *Colorado River*, 424 U.S. at 800). "Parallel cases involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues.'" *Id.* (quoting *Timoney v. Upper Merion Twp.*, 66 F. App'x 403, 405 (3d Cir. 2003)). "[T]he *Colorado River* doctrine applies only if there is parallel state court litigation." *Marcus v. Twp. of Abington*, 38 F.3d 1367, 1371 (3d Cir. 1997). Here, nothing in the record suggests the existence of a parallel state court proceeding. The parties are not litigating in a state court for the same or similar disputes under the Policy. Therefore, *Colorado River* abstention is inapplicable.

## B.    *Brillhart* Abstention Is Inapplicable

Zurich posits *Brillhart* abstention is inapplicable here, because Count Basie's legal claim is pleaded as a declaratory claim, which is a misuse of the declaratory judgment remedy intended to activate the Court's discretionary jurisdiction in order to deprive Zurich of its chosen forum. (ECF No. 15 at 7.) Zurich explains the dispute between the parties has ripened into an alleged breach of contract, because Count Basie seeks a declaration that Zurich's denial of its insurance claim was improper, and has included a specific monetary demand as part of its proposed declaration. (*Id.* at 7–8.) Count Basie stresses the existence of a potential legal remedy does not preclude a declaratory judgment that is otherwise appropriate. (ECF No. 17 at 7.) The Court agrees.

"The possibility that a plaintiff could seek other, non-declaratory forms of relief remains irrelevant to the applicability of the DJA regardless of the plaintiff's motive for choosing to bring a declaratory judgment action." *Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, Nos. 20-2954, 20-2958, 20-3122, 2021 U.S. App. LEXIS 24644, at *23 (3d Cir. Aug. 18, 2021). "The plaintiff, as master of the complaint, may make a genuine choice to limit the relief sought." *Id.* at *23–24.

The Third Circuit declines to "foreclose the possibility that '[i]t may, in some circumstances, be possible for a party's claim for legal relief to masquerade as a declaratory judgment, improperly activating discretionary jurisdiction.'" *Id*. at *25 (quoting *Reifer*, 751 F.3d at 137). Therefore, the Court must analyze the *Reifer* factors to determine whether it should exercise abstention and order remand.

### 1. The Third *Reifer* Factor Disfavors Remand

Count Basie contends the public interest is best served by a New Jersey state court applying and interpreting its own law with regard to the novel and unsettled insurance issues created by the COVID-19 pandemic. (ECF No. 6-1 at 19.) Count Basie identifies three sets of allegedly unsettled issues. First, Count Basie maintains the enforceability of an exclusion purporting to exclude insurance coverage for loss caused by a virus (*i.e.*, a virus exclusion) implicates important issues of state public policy, which remain unsettled. (ECF No. 22 at 8–9.) Count Basie asserts the Microorganism Exclusion in the Policy, though different from a virus exclusion, involves the same unsettled issues of state public policy. (*Id.* at 10.) Further, Count Basie argues the Microorganism Exclusion is ambiguous, because its definition of microorganism includes a virus that is considered an organism, but a virus is generally not considered an organism. (ECF No. 17 at 15.) Count Basie points out the meaning and the enforceability of the Microorganism Exclusion have not been adjudicated in any New Jersey court. (*Id.* at 16.) Second, Count Basie claims no New Jersey court that dismissed an insured's complaint based on a virus exclusion has dealt with the issues of coverage and its limits under a communicable disease business income coverage, and these issues are now being litigated in New Jersey state courts. (*Id.* at 16–17.) Third, Count Basie insists whether the loss of use of an insured property, caused by compliance with government shutdown orders, constitutes a direct loss or damage is an unsettled issue in New Jersey. (*Id.* at 17.)

Zurich counters New Jersey courts have addressed both grounds for its motion to dismiss Count Basie's claims: (1) Count Basie has not alleged any direct physical loss of or damage to a property at or within one mile of its insure premise, which is required to trigger the Business Income Coverage and the Civil Authority Coverage, and (2) the Microorganism Exclusion bars Count Basie's recovery under the two coverages. (ECF No. 5-1 at 18; ECF No. 15 at 14.) Zurich explains, to ascertain whether Count Basie is entitled to recovery under the two coverages, the Court must determine: (1) whether Count Basie's business interruption losses were caused by direct physical loss of or damage to a property at or within one mile of an insured location and, (2) if so, whether coverage for those losses is precluded by the Microorganism Exclusion. (ECF No. 21 at 7.) Zurich asserts recent decisions by New Jersey courts are sufficient to resolve the two questions, because these decisions found: (1) the loss of use of an insured property caused by compliance with government shutdown orders does not constitute a direct physical loss or damage, and (2) a virus exclusion is enforceable and precludes coverage for the losses arising out of the COVID-19 pandemic, regardless of whether the losses result from the actual presence of the COVID-19 virus at the property or the loss of use due to government shutdown orders. (ECF No. 15 at 15.) Zurich further contends New Jersey courts do not overrule policy terms, such as an exclusion, on public policy grounds when the literal meaning of the policy is plain. (ECF No. 21 at 10.) Zurich stresses the Microorganism Exclusion is not ambiguous, because the term "microorganism" is expressly defined as including a virus. (*Id.* at 11.) The Court agrees.

"[A]s to the third factor, there is no real public interest in a federal court settling an issue of state law." *Gibbons v. Mid-Century Ins. Co.*, 489 F. Supp. 3d 325, 331 n.3 (E.D. Pa. 2020). "Where state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise DJA

jurisdiction." *Reifer*, 751 F.3d at 148 (citing *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135–36 (3d Cir. 2000)). "The fact that district courts are limited to predicting—rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" *Id.* (quoting *Summy*, 234 F.3d at 135). "[T]he public interest in resolving the uncertainty of [the defendant's] obligation is best served by" a remand, when "[d]isposition of this case will require careful application of New Jersey public policy in an unfamiliar context." *Grand Cru, LLC v. Liberty Mut. Ins. Co.*, Civ. A. No. 20-6878, 2020 U.S. Dist. LEXIS 221699, at *16 (D.N.J. Nov. 25, 2020) (citing *Mattdogg, Inc. v. Phila. Indem. Ins. Co.*, Civ. A. No. 20-6889, 2020 U.S. Dist. LEXIS 191960, at *11–14 (D.N.J. Oct. 16, 2020)); *see also Burke-Dice v. Gov't Emples. Ins. Cos.*, Civ. A. No. 17-3198, 2017 U.S. Dist. LEXIS 129858, at *14 (E.D. Pa. Aug. 15, 2017) ("The Court must . . . consider whether resolution of the parties' claims depends on issues of novel or unsettled state law, which, under *Summy* and *Reifer*, would favor the Court 'stepping back' and permitting them to proceed through the state courts."); *Bransfield v. N.J. Mfrs. Ins. Co.*, Civ. A. No. 17-0088, 2017 U.S. Dist. LEXIS 25257, at *15 (E.D. Pa. Feb. 23, 2017) (granting remand, because "retaining jurisdiction in this case would require the Court to make a threshold determination as to the unsettled question of" state law). As illustrated below, the third factor disfavors remand, because disposition of this case does not require the Court to make a decision on an unsettled question of state law or public policy.

### a.   Interpreting the Microorganism Exclusion Does Not Involve an Unsettled Question of State Law or Public Policy

"The mere fact that no state court has specifically ruled on the issue before this Court does not mean that the state law is so unsettled that this Court should abstain from deciding this case." *BCB Bancorp. v. Progressive Cas. Ins. Co.*, Civ. A. No. 13-1261, 2014 U.S. Dist. LEXIS 73314, at *23 (D.N.J. May 28, 2014). "District courts are routinely called upon to interpret contracts under

state law." *Id.* (citation omitted). "'An insurance policy is a contract' interpreted by courts, and sister-state courts and federal courts are equally capable of applying state contract law." *Dianoia's*, 2021 U.S. App. LEXIS 24644, at *38 (citing *Villa v. Short*, 947 A.2d 1217, 1222 (N.J. 2008)). "That includes state contract law on public policy exceptions." *Id*. Therefore, even if no New Jersey court has ruled on a microorganism exclusion, it does not end the third factor inquiry for the exclusion. The inquiry here remains whether it is possible to resolve the disputes concerning the Microorganism Exclusion under established New Jersey law. The Court finds it is.

First, the Microorganism Exclusion is not ambiguous.

A genuine ambiguity exists "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Lee v. Gen. Accident Ins. Co.*, 767 A.2d 985, 987 (N.J. Super. Ct. App. Div. 2001) (citing *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979)). "For an ambiguity to exist, it must be apparent on the face of the agreement by apparently referencing two or more things at the same time." *Bayer Chems. Corp. v. Albermarle Corp.*, 171 F. App'x 392, 400 (3d Cir. 2006). "An 'insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants.'" *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263, 1270 (N.J. 2017) (quoting *Fed. Ins. Co. v. Campbell Soup Co.*, 885 A.2d 465, 468 (N.J. Super. Ct. App. Div. 2005)). Here, the Microorganism Exclusion provides the insurer "will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of 'microorganisms,' unless resulting from fire or lightning." (ECF No. 5-1 at 12.) The Court finds the phrasing of the Microorganism Exclusion is not so confusing as to render it ambiguous.

There is no ambiguity as to the causal relationship set forth in the Microorganism Exclusion. "If the language of an exclusion requires a causal link, courts must consider its nature and extent because evaluating that link will determine the meaning and application of the exclusion." *Flomerfelt v. Cardiello*, 997 A.2d 991, 997 (N.J. 2010) (citation omitted). Here, the anti-concurrent/anti-sequential language in the Microorganism Exclusion clarifies it will "deny[] recovery," when "one of the undisputed causes of loss was the subject of an exclusion," *i.e.*, a microorganism. *Lam Inv. Research, LLC v. Pub. Serv. Mut. Ins. Co.*, Civ. A. No. 12-5576, 2016 U.S. Dist. LEXIS 45116, at *12–13 (D.N.J. April 1, 2016) (finding that the portion of a provision, which stated the insurer would "not pay for any damage caused 'directly or indirectly by certain occurrences[,] regardless of any other cause or event that contributes concurrently or in any sequence to the loss,'" was "clearly an 'anti-concurrent [and] anti-sequential clause'" (citing *Ashrit Realty LLC v. Tower Nat'l Ins. Co.*, Civ. A. No. 1647-13T4, 2015 N.J. Super. Unpub. LEXIS 107, at *11 (N.J. Super. Ct. App. Div. Jan. 20, 2015))); *see also Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, Civ. A. No. 20-8676, 2021 U.S. Dist. LEXIS 50985, at *13–14 (D.N.J. Mar. 18, 2021) (finding that the portion of a provision, stating the "loss caused 'directly or indirectly' by a virus is excluded," was an "anti-concurrent clause," which meant the policy would "not provide coverage for losses caused directly or indirectly by a virus, regardless of any other cause or event that contribute[d] concurrently or in any sequence to the loss" (citing *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, Civ. A. No. 20-5289, 2020 WL 6501722, at *4 (D.N.J. Nov. 5, 2020))).

Also, there is no ambiguity as written in the Policy's definition for the term "microorganism," which refers to "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, 'fungus,' wet or dry rot, virus, algae, or bacteria,

or any by-product." (ECF No. 5-1 at 12.) Count Basie's assertion that a virus is generally not considered an organism is irrelevant, because an insurance policy may adopt special definitions for its terms, even if they depart from the terms' common usage,[6] and such special definitions do not automatically create an ambiguity. *See D'Agostino v. First Trenton Indem. Co.*, Civ. A. No. 5518-05T2, 2007 N.J. Super. Unpub. LEXIS 1195, at *7 (N.J. Super. Ct. App. Div. Apr. 17, 2007) (concluding that "the special definition of 'highway vehicle'" in an insurance policy "d[id] not introduce any ambiguity into the term 'vehicle,'" when "a 'motorcycle' [was] excluded from the special definition of 'highway vehicle,'" even though "in common usage, a 'motorcycle' is a 'vehicle'"). In particular, the Court does not discern, and Count Basie does not present, any legal authority holding that a virus cannot be expressly defined as an organism in a contract. Instead, a number of courts have found an exclusion clause, which recognizes a virus as an organism, to be unambiguous and enforceable. *See, e.g.*, *Cibus LLC v. Eagle W. Ins. Co.*, Civ. A. No. 20-277, 2021 U.S. Dist. LEXIS 12904, at *9–10, 13–14 (D. Ariz. Jan. 21, 2021) (finding that a pathogenic organisms exclusion, in which the term "pathogenic organisms" was defined as "any bacteria, yeast, mildew, virus . . . ," was "clear" in language and "prevented coverage of [p]laintiff's claim");

---

[6] The Court need not make a factual determination on whether a virus could be an organism. However, the Court is aware of numerous cases that treated a virus as an organism. *See, e.g.*, *Kamakura, LLC v. Greater N.Y. Mut. Ins. Co.*, Civ. A. No. 20-11350, 2021 U.S. Dist. LEXIS 63575, at *16 (D. Mass. Mar. 9, 2021) ("[T]he virus is a submicroscopic organism."); *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, Civ. A. No. 20-1198, 2020 U.S. Dist. LEXIS 191885, at *16–17 (W.D. Pa. Oct. 16, 2020) (finding that the term "infectious disease" under the Public Readiness and Preparedness Act "mean[t] a disease potentially caused by a pathogenic organism (including a . . . virus . . .)"); *NRDC v. United States EPA*, 808 F.3d 556, 567 (2d Cir. 2015) (considering "bacteria or viruses" as "'small' organisms"); *Hudson River Fishermen's Ass'n v. New York*, 751 F. Supp. 1088, 1095 (S.D.N.Y. 1990) ("Such microbiological organisms as bacteria, viruses, plankton and protozoans must be killed and should be removed before the water may be consumed safely."). At best, Count Basie may assert "there is some argument over whether viruses are living organisms," as "most virologists consider them nonliving." *Ungarean v. CNA*, Civ. A. No. GD-20-006544, 2021 Pa. Dist. & Cnty. Dec. LEXIS 2, at *37 n.27 (Pa. Com. Pl. Allegheny Cnty. Mar. 22, 2021).

*Boxed Foods Co., LLC v. Cal. Capital Ins. Co.*, Civ. A. No. 20-4571, 2020 U.S. Dist. LEXIS 198859, at *6 n.3, 10, 12 (N.D. Cal. Oct. 26, 2020) (finding that a virus exclusion, in which the term "pathogenic organism" was defined to include a virus, was "not ambiguous" and "preclude[d] [p]laintiffs' claim for business income losses and extra expenses under the [c]ivil [a]uthority provision"). Especially, in *Panini's*, the court found the exact same Microorganism Exclusion, in which the term "microorganism" was defined in the same manner as here, to be "applicable" and "exclude[] coverage for [the plaintiff insured's] loss, cost or expense incurred" during the COVID-19 pandemic. *Panini's v. Zurich Am. Ins. Co.*, Civ. A. No. 20-1895, 2021 U.S. Dist. LEXIS 31110, at *24–26 (N.D. Ohio Feb. 19, 2021).

Accordingly, the Court discerns no reason to find the Microorganism Exclusion ambiguous.

Second, the Microorganism Exclusion cannot be invalidated on public policy grounds.

"Exclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt*, 997 A.2d at 996 (quoting *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997)). "If the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.* (citations omitted); *see also President v. Jenkins*, 853 A.2d 247, 254 (N.J. 2004) ("If the policy terms are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased." (citing *Gibson v. Callaghan*, 730 A.2d 1278, 1282 (N.J. 1999))). "[P]ublic policy considerations alone are not sufficient to permit a finding of coverage in an insurance contract when its plain language cannot fairly be read otherwise to provide that coverage." *State v. Signo Trading Int'l, Inc.*, 612 A.2d 932, 940 (N.J. 1992) (citation omitted). Because the Microorganism Exclusion is unambiguous, it could not be invalidated for public policy reasons. *See Carpe Diem SPA, Inc. v.*

15

*Travelers Cas. Ins. Co. of Am.*, Civ. A. No. 20-14860, 2021 U.S. Dist. LEXIS 57969, at *5, 8 n.6 (D.N.J. Mar. 26, 2021) (finding that an "unambiguous" virus exclusion precluded the insured's recovery under the policy's business income, extra expense, and civil authority provisions, despite the insured's argument that the virus exclusion was "void as against public policy"); *Matmogg, Inc. v. Phila. Indem. Ins. Co.*, Civ. A. No. 820-20, 2020 N.J. Super. LEXIS 250, at *6, 10–11 (N.J. Super. Law Div. Nov. 17, 2020) (finding that the insured's claims for insurance coverage did not "survive the virus exclusion provision" that was "clear and unambiguous," despite the insured's argument "that the virus exclusion provision [wa]s against public policy"). Instead, "the public policy [that] must [be] follow[ed]" here is "to enforce an insurance policy 'as written' and not seek 'to make a better contract for either of the parties' than that which they chose to make for themselves." *Germany*, 2021 U.S. Dist. LEXIS 50985, at *19–20 (declining to find a virus exclusion "void as violative of public policy" (citing *Hebela v. Healthcare Ins. Co.*, 851 A.2d 75, 82 (N.J. Super. Ct. App. Div. 2004))).

Indeed, the Court is aware of some New Jersey cases where an exclusion clause was invalidated merely because it was against public policy, but these cases all dealt with compulsory insurances, such as auto insurances and workers' compensation policies. *See, e.g.*, *Khandelwal v. Zurich Ins. Co.*, 50 A.3d 52, 58 (N.J. Super. Ct. App. Div. 2012) ("[I]ntra-family exclusions are not permitted in the context of an automobile insurance policy." (citations omitted)); *Schmidt v. Smith*, 713 A.2d 1014, 1015–18 (N.J. 1998) (invalidating an exclusion in a workers' compensation policy that "den[ied] coverage for bodily injury caused by acts of sexual harassment in the workplace," because it "would prevent an employer from complying with N.J.S.A. 34:15-71," thereby "violat[ing] the public policy underlying the workers' compensation scheme"); *Scott v. Salerno*, 688 A.2d 614, 618 (N.J. Super. Ct. App. Div. 1997) ("In view of the strong public policy

16

of this State to provide coverage to anyone using an automobile with the owner's permission, the exclusion from that coverage of anyone using the automobile while parking or storing that automobile . . . is void and unenforceable."); *Harleysville Ins. Co. v. Crum & Forster Personal Ins.*, 588 A.2d 385, 388 (N.J. Super. Ct. App. Div. 1990) ("The exclusion as an additional insured of any person employed or otherwise engaged in duties in connection with an automobile business 'violates the clear public policy of this State and any policy provision containing such exclusion is void.'" (citations omitted)). These cases are distinguishable, because Count Basie is not statutorily required to enter into the Policy. When an "insurance is statutorily required," "any deviation therefrom would be in contravention with the public policy of New Jersey;" but if an insurance is "not required," as here, then "[a]ny additions, exclusions, or other conditions of such policy does not contravene public policy in New Jersey." *Weitz v. Allstate Ins. Co.*, 642 A.2d 1040, 1041 (N.J. Super. Ct. 1994) (discussing a "distinction between an automobile policy and an umbrella policy"); *see also Green v. Mercury Ins. Grp.*, Civ. A. No. 4036-11T2, 2013 N.J. Super. Unpub. LEXIS 426, at *10 (N.J. Super. Ct. App. Feb. 26, 2013) ("Although [the plaintiff] contends that the exclusions violate public policy, he has identified no conflict with statutorily mandated coverage. Our review is therefore properly directed to the plain and ordinary meaning of the language of each exclusion." (citing *Potenzone v. Annin Flag Co.*, 922 A.2d 745, 748 (N.J. 2007))); *Horesh v. State Farm Fire & Cas. Co.*, 625 A.2d 541, 543 (N.J. Super. Ct. App. 1993) (distinguishing "cases which invalidated automobile liability policy exclusions of claims for injuries to an insured" from those involving a homeowners' policy, where "there is no legal requirement [to] have a particular range of coverages," because "[a]uto policies are mandated").

Third, the Court discerns no unsettled New Jersey public policy that weighs in favor of abstention. "After parties enter into an insurance policy with language approved by a state's

regulator, it is unclear what special call that regulator or that state's court system has to weigh any public policy arguments implicated by disputes over that policy's terms." *Dianoia's*, 2021 U.S. App. LEXIS 24644, at *38. "If New Jersey's courts were also tasked with issuing public health orders that are implicated by virus exclusion clauses, like the Pennsylvania Supreme Court and its exclusive authority over the Rules of Professional Conduct in *Reifer*, then that could be considered by a federal court when declining to exercise jurisdiction over an insurance dispute." *Id.* "Given the lack of any such public health authority, the issue of a virus exclusion being void as against public policy is not 'peculiarly within the purview' of the state courts so as to weigh in favor of abstention." *Id.*

Fourth, Count Basie's invocation of *Henderson*, which found a microorganism exclusion did not exclude insurance coverage (ECF No. 17 at 16 (citing *Henderson Rd. Res. Sys. Inc. v. Zurich Am. Ins. Co.*, Civ. A. No. 20-1239, 2021 U.S. Dist. LEXIS 9521 (N.D. Ohio Jan. 19, 2021))), does not change the analysis.

In *Henderson*, the court "kn[e]w that insurers included the [m]icroorganism exclusion in their polices to exclude coverage for damage to properties caused by the contamination of viruses or bacteria on the premises," and "the parties [] stipulated to the fact that COVID-19 did not contaminate the [p]laintiffs' premises." *Henderson*, 2021 U.S. Dist. LEXIS 9521, at *44. With such an understanding, the *Henderson* court concluded the microorganism exclusion did not bar coverage for the insured's damages sustained during the COVID-19 pandemic, because "[u]nder Ohio law, the [c]ourt must attempt to construe an exclusion . . . 'in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.'" *Id.* at *43–44 (quoting *Bluemile, Inc. v. Atlas Indus. Contrs., Ltd.*, 102 N.E.3d 579, 585 (Ohio Ct. App. 2017)). In other words, the *Henderson* decision on a microorganism exclusion

was made pursuant to Ohio law. Therefore, the decision says nothing about how the Microorganism Exclusion should be treated under New Jersey law, not to mention any unsettled question of state law or public policy in New Jersey. As a result, the Court declines to consider *Henderson* in the third factor inquiry.

Accordingly, the Court does not discern a necessity to decide on an unsettled question of state law or public policy in analyzing the enforceability of the Microorganism Exclusion.

### b.    Whether the Loss of Use Constitutes a Direct Loss or Damage Is Irrelevant

The Court notes the direct physical loss of or damage to a property at or within one mile of Count Basie's insured premises is required to trigger the Business Income Coverage and the Civil Authority Coverage. However, as illustrated below, whether or not Count Basie can establish such a direct physical loss or damage is irrelevant. This is because the Microorganism Exclusion bars Count Basie's recovery under the two coverages, and nothing in the Complaint could rebut this conclusion.

The Business Income Coverage covers the "actual loss of 'business income' [Count Basie] sustain[s] due to the necessary 'suspension' of [its] 'operations' . . . caused by direct physical loss of or damage to" the insured premises. (ECF No. 5-5 at 137.) However, this coverage is subject to several exclusions. The Policy provides "the excluded causes of loss in the REAL AND PERSONAL PROPERTY COVERAGE FORM . . . apply to loss of 'business income' caused by or resulting from loss of or damage to" Count Basie's insured premises. (*Id.* at 140.) The Microorganism Exclusion represents one of the excluded causes of loss in the REAL AND PERSONAL PROPERTY COVERAGE FORM. (*Id.* at 73, 75.) As a result, the Microorganism Exclusion bars Count Basie's recovery under the Business Income Coverage.

The Civil Authority Coverage is triggered only when a "covered cause of loss" has directly caused direct physical loss of or damage to a property within one mile of the insured premise, which "sustains a 'business income' loss." (*Id.* at 137.) The Civil Authority Coverage further states an action of civil authority "must result from a civil authority's response to" such a direct physical loss or damage. (*Id.*) That is, for the Civil Authority Coverage to apply, the Executive Orders must result from the government response to the direct physical loss of or damage to a property. However, the Executive Orders "were issued as the direct result of COVID-19—a cause of loss that falls squarely within" the Microorganism Exclusion, which precludes the Executive Orders from the definition of a covered cause of loss, and renders the Civil Authority Coverage inapplicable. *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*, Civ. A. No. 20-04434, 2020 U.S. Dist. LEXIS 174010, at *2–3 (N.D. Cal. Sept. 22, 2020) (rejecting the plaintiff's argument that the covered cause of loss was the government shutdown orders, and finding that the plaintiff's "theory for recovery under the [c]ivil [a]uthority [p]rovision fail[ed]"); *see also Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, Civ. A. Nos. 20-1949, 20-1869, 2020 U.S. Dist. LEXIS 238254, at *8 (E.D. Pa. Dec. 17, 2020) (finding that "the shutdown orders" were "excluded from the definition of covered cause of loss," because of a virus exclusion). Even if the Court assumes it was the fact that "the virus contaminated other properties," not the COVID-19 virus itself, that "caused the civil authorities to issue the" Executive Orders, then "the cause of the insureds' losses [would be] the virus, which is specifically excluded as a covered cause of loss." *Newchops Rest.*, 2020 U.S. Dist. LEXIS 238254, at *8. Because the Court discerns no covered cause of loss that caused direct physical loss of or damage to a property (assuming it includes loss of use), and the Executive Orders were not issued in response to such a loss or damage, Count Basie is not entitled to recovery under the Civil Authority Coverage.

Nothing in the Complaint changes this analysis. Apart from the aforementioned ambiguity and public policy arguments, Count Basie raises other grounds to challenge the enforceability of the Microorganism Exclusion, but none of them are availing. First, Count Basie argues, "for an inexperienced and unsophisticated insured to understand" the exclusions applicable to the Business Income Coverage Form, which contains no express virus exclusion, "the insured must navigate to a separate section," *i.e.*, the Real and Personal Property Coverage Form. (ECF No. 1-1 ¶¶ 113, 115.) The Court finds this argument irrelevant, because Count Basie is not an unsophisticated consumer, but a business corporation that runs at least six facilities. Also, "[t]he fact that a policy is long, and that pertinent language is not contained on a single page, does not, in itself, render the policy structurally ambiguous." *Weitz*, 642 A.2d at 1041 (citing *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1144 (Wash. 1984)). Second, Count Basie contends "[a] reasonably objective person reviewing" the Microorganism Exclusion would not understand or expect "that it excludes coverage for loss caused by virus," because "a virus is not a microorganism" and the Real and Personal Property Coverage Form "does not use the word virus." (*Id.* ¶¶ 117, 120.) The Court rejects this contention, because the Policy's definition for the term "microorganism" clearly includes a virus. Moreover, the Court should not undertake the reasonable expectation inquiry when the Microorganism Exclusion is unambiguous. *Signo Trading*, 612 A.2d at 938 ("[C]ourts should resort to the doctrine of reasonable expectations only when 'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" (citing *Weedo*, 405 A.2d at 795)).

In conclusion, whether or not the loss of use of Count Basie's insured premises is a direct loss or damage, the Microorganism Exclusion bars Count Basie's recovery under the Business Income Coverage and the Civil Authority Coverage, unless Count Basie could raise new grounds

to prevent Zurich from enforcing the Microorganism Exclusion. The Court need not decide on an unsettled question of state law or public policy to reach this conclusion.

> **c.      The Dispute Concerning the Communicable Disease Business Income Coverage Does Not Involve an Unsettled Question of State Law or Public Policy**

Count Basie argues the Microorganism Exclusion does not apply to the Communicable Disease Business Income Coverage. (ECF No. 17 at 16.) Zurich does not object to this argument. Instead, Zurich concedes Count Basie is entitled to recover under this coverage, and chooses not to move to dismiss Count Basie's claim for the coverage. (ECF No. 5-1 at 13, 14 n.2.) That is, Zurich admits the Microorganism Exclusion does not bar Count Basie's recovery under the Communicable Disease Business Income Coverage. Therefore, it is undisputed that the Microorganism Exclusion does not bar Count Basie's recovery under the Communicable Disease Business Income Coverage.[7]

As for the limit of Count Basie's recovery under the coverage, it is "merely [an issue] of contractual interpretation," which involves "no strong state interest at stake" and "do[es] not raise novel questions of state law." *Casino Beach Pier LLC v. Westchester Surplus Lines Ins. Co.*, Civ. A. No. 20-10163, 2021 U.S. Dist. LEXIS 68318, at *18 (D.N.J. April 8, 2021) (citing *BCB Bancorp.*, 2014 U.S. Dist. LEXIS 73314, at *24). The Court does not discern, and Count Basie does not identify, any unsettled question of state law or public policy involved in determining

---

[7] The Court finds the Microorganism Exclusion does not necessarily bar recovery under the Communicable Disease Business Income Coverage. The coverage is triggered when the insured sustains "actual loss of 'business income'" due to the suspension of the insured premise caused by a governmental order "that prohibits access to" the insured premise. (ECF No. 5-5 at 170.) "That order must result from the discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at the" insured premise. (*Id.*) Because a "suspicion" or "threat" of a communicable disease—which can occur in the absence of a microorganism that may cause the disease—is sufficient to trigger the Communicable Disease Business Income Coverage, the Microorganism Exclusion will not always bar recovery under the coverage.

Count Basie's limit of recovery. Even if "no state court has specifically ruled on the issue" of limit, it "does not mean that the state law is so unsettled that this Court should abstain from deciding this case." *BCB Bancorp.*, 2014 U.S. Dist. LEXIS 73314, at *23.

Accordingly, the Court need not decide on an unsettled question of state law or public policy to resolve the dispute concerning the Communicable Disease Business Income Coverage.

### d. *Mattdogg*, *Marc Daniel Hospitality*, and *Grand Cru* Are Distinguishable

Count Basie's invocation of *Mattdogg*, *Marc Daniel Hospitality*, and *Grand Cru*, which found the public interest was best served by deferring to New Jersey state courts to resolve the insurance coverage issues resulting from the COVID-19 pandemic (ECF No. 6-1 at 19 (citing *Mattdogg*, 2020 U.S. Dist. LEXIS 191960; *Marc Daniel Hospitality, LLC v. AmGuard Ins. Co.*, Civ. A. No. 20-6772, 2020 U.S. Dist. LEXIS 191956 (D.N.J. Oct. 16, 2020); *Grand Cru*, 2020 U.S. Dist. LEXIS 221699)), does not change the conclusion, because these cases are distinguishable.

The state law question considered unsettled in *Mattdogg* and *Marc Daniel Hospitality* is not involved here. In the two cases, the unsettled question was "whether a state government order, which required partial closure of businesses, constitute[d] 'loss or damage caused directly or indirectly' by a virus." *Mattdogg*, 2020 U.S. Dist. LEXIS 191960, at *12; *Marc Daniel Hospitality*, 2020 U.S. Dist. LEXIS 191956, at *12. But the related question here is whether the loss of use of Count Basie's insured premises caused by the Executive Orders constitutes a direct loss or damage, regardless of its causal relationship with a virus.

In *Grand Cru*, the Court did not specify an unsettled state law question, but noted "[t]his case appear[ed] to raise unsettled questions of state law," because it was "about insurance coverage for losses resulting from an ongoing pandemic," the disposition of which would "require careful

application of New Jersey public policy in an unfamiliar context." *Grand Cru*, 2020 U.S. Dist. LEXIS 221699, at *15–16 (citing *Mattdogg*, 2020 U.S. Dist. LEXIS 191960, at *13). The *Grand Cru* court explained, "[a]t this time, there d[id] not appear to be clearly established legal authority from the New Jersey state courts addressing the precise legal issues in this case." *Id.* (citing *Mattdogg*, 2020 U.S. Dist. LEXIS 191960, at *13). The phrase "at this time" implies, with the accumulation of New Jersey state court decisions addressing these legal issues, the state law questions in *Grand Cru* may no longer be "unsettled."

This implied point was later elaborated in *Causeway Auto.*, where the court stated, although "in *Mark Daniel Hospitality* and *Mattdogg*, . . . it was better to permit the New Jersey State Courts to resolve, in the first instance, questions regarding insurance coverage in the wake of the COVID-19 pandemic," since these decisions were issued, "the New Jersey State Courts ha[d] begun to rule on these matters, providing important guidance to the federal courts." *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, Civ. A. No. 20-8393, 2021 U.S. Dist. LEXIS 25325, at *2 n.1 (D.N.J. Feb. 10, 2021) (citing *Marc Daniel Hospitality*, 2020 U.S. Dist. LEXIS 191956, at *13–14); *see also Casino*, 2021 U.S. Dist. LEXIS 68318, at *16 & n.8 (citations omitted) (finding that, "since the issuance of *Mark Daniel Hospitality* and *Mattdogg*, the New Jersey State Courts ha[d] begun to rule on" the issues concerning "whether virus exclusions were enforceable in the context of the COVID-19 pandemic," thereby "providing important guidance to federal courts").[8] Especially, the state court, to which *Mattdogg*'s matter was remanded, "issued an [o]rder granting defendants' motion to dismiss" the insured's claims for coverage. *Id.* (citing *Matmogg*, 2020 N.J. Super. LEXIS 250, at *11).

---

[8] The Honorable Freda L. Wolfson, the presiding judge in *Causeway* and *Casino*, made these remarks on the evolving case law in New Jersey, and noted a change from his previous opinions in *Mark Daniel Hospitality* and *Mattdogg* on such case law.

Therefore, *Mattdog*, *Marc Daniel Hospitality*, and *Grand Cru* are distinguishable, because they neither address the state law questions in dispute here, nor reflect the current case law regarding the insurance coverage issues in the wake of the COVID-19 pandemic.

In conclusion, the Court finds the third *Reifer* factor disfavors remand.

## 2.     The Fifth *Reifer* Factor Does Not Favor Remand

Count Basie maintains the issues here are the same issues pending in state courts. (ECF No. 17 at 18.) Count Basie identifies several cases before New Jersey state courts, in which the issues of (1) what constitutes a physical loss of or damage to a property, and (2) the limit of coverage under a communicable disease business income coverage are being adjudicated. (*Id.*; ECF No. 6-1 at 22–23.) Count Basie also identifies four recently filed lawsuits in which the insureds are suing Zurich for insurance coverage in New Jersey state courts. (ECF No. 17 at 18.) Zurich counters the same issues are not pending in state courts. (ECF No. 21 at 13.) Zurich points out none of the four lawsuits filed against it involve the same issues or policy terms. (*Id.*) Zurich maintains a microorganism exclusion is not at issue in any of the cases cited by Count Basie. (*Id.*) The Court agrees.

The fifth factor calls for "a general policy of restraint when the same issues are pending in a state court." *Reifer*, 751 F.3d at 146. This "'policy of restraint' is applicable only when the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding." *Dianoia's*, 2021 U.S. App. LEXIS 24644, at *29 (citations omitted). Here, the Court does not discern, and Count Basie does not identify, any pending state court cases where Count Basie and Zurich are litigating the same issues as before this Court. The state court cases that Count Basie refers to at best involve the same legal questions. Therefore, the fifth factor does not favor remand.

### 3. Taken Together, the *Reifer* Factors Disfavor Remand

As for the remaining factors, Zurich contends they support the Court's exercise of jurisdiction. (ECF No. 15 at 17.) Count Basie declines to address them, arguing "they may not significantly impact the Court's analysis." (ECF No. 6-1 at 19 n.2.) Even if Count Basie's assessment of the remaining factors is correct, "the lack of pending parallel state proceedings" here is not "outweighed by opposing factors." *Reifer*, 751 F.3d at 144. Therefore, the Court declines to abstain from hearing this case, and denies Count Basie's Motion to Remand.

## IV.   CONCLUSION

For the reasons set forth above, Count Basie's Motion to Remand is **DENIED**. An appropriate order follows.

Date: **August 24, 2021**                                    */s/ Brian R. Martinotti*_____
                                                            **HON. BRIAN R. MARTINOTTI**
                                                            **UNITED STATES DISTRICT JUDGE**