**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COUNT BASIE THEATRE INC., <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendant. | Case No. 2:21-cv-00615 (BRM) (LDW) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Zurich American Insurance Company's ("Zurich") Partial Motion to Dismiss the Plaintiff Count Basie Theater, Inc.'s ("Count Basie") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28.) Count Basie opposes the motion (ECF No. 29) and Zurich filed a reply (ECF No. 30). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Zurich's Partial Motion to Dismiss is **GRANTED**.

**I.     BACKGROUND**[1]

For the purpose of this motion to dismiss, the Court accepts the factual allegations in the Third Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs.

---

[1] The factual and procedural backgrounds of this matter are well known to the parties and were previously recounted by the Court in its Opinion denying Count Basie's Motion to Remand. (ECF No. 24.) Therefore, the Court includes only the facts and procedural background relevant to this Motion.

*See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Count Basie owns, and/or operates out of, six insured premises in Red Bank, Monmouth County, New Jersey. (Compl. (ECF No. 1-1) ¶ 1.) Zurich is a commercial property and casualty insurance company, which issued a commercial package property insurance policy (the "Policy") to Count Basie for the period between November 1, 2019 and November 1, 2020. (*Id*. ¶¶ 1, 4.) The Policy contains a Schedule of Locations for the six insured premises under the Policy. (*Id*. ¶ 6.)

The Policy includes numerous forms of Additional Coverages available to Count Basie. (*Id*. ¶ 20.) Under the Historic Properties Additional Coverages, Zurich provided Count Basie with Communicable Disease Business Income Coverage. (*Id*. ¶¶ 21–22.) The Communicable Disease Business Income Coverage provides:

> If the Business Income Coverage Form (Excluding Extra Expense) is included in this Commercial Property Coverage Part, the coverage provided at a "premises" or "reported unscheduled premises" will also cover the actual loss of "business income" you sustain resulting from the necessary "suspension" of your "operations" if the "suspension" is caused by an order of an authorized public health official or governmental authority that prohibits access to the "premises" or "reported unscheduled premises," or a portion of that "premises" or "reported unscheduled premises." That order must result from the discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at that "premises" or "reported unscheduled premises."

(*Id*. ¶ 22.) The Policy includes further coverage under the Business Income Coverage Form. (*Id*. ¶ 51.) The Business Income Coverage provides:

> We will pay for the actual loss of "business income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at a "premises" at which a

> Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a "covered cause of loss." We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that "premises."

(ECF No. 1-1 ¶ 52; Policy, Ex. 2 (ECF No. 28-3) at 137.) Apart from the Business Income Coverage, the Policy includes Civil Authority Coverage, which provides:

> We will pay for the actual loss of "business income" you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary "suspension", or delay in the start, of your "operations" if the "suspension" or delay is caused by order of civil authority that prohibits access to the "premises" or "reported unscheduled premises." That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the "premises" or "reported unscheduled premises" which sustains a "business income" loss. The loss or damage must be directly caused by a "covered cause of loss."

(ECF No. 1-1 ¶ 91; ECF No. 28-3 at 137.) The Policy defines a "covered cause of loss" as "a fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period."

(ECF No. 28-3 at 55.)

The Policy also contains certain "excluded causes of loss," which includes microorganisms (the "Microorganism Exclusion"), stating in relevant part:

> We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "microorganisms," unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a "mistake," "malfunction," or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.
>
> . . .
>
> We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove,

3

>treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "microorganisms".

(*Id.* at 75.) The Policy defines "microorganism" as "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, 'fungus', wet or dry rot, virus, algae, or bacteria, or any by-product." (*Id*. at 60.)

In March 2020, Governor Philip D. Murphy of the State of New Jersey issued a series of executive orders (the "Executive Orders"), which Count Basie alleges to have prohibited access to its business facilities. (ECF No. 1-1 ¶¶ 27–29.) One Executive Order explains "suspending operations at these businesses is part of the State's mitigation strategy to combat COVID-19 and reduce the rate of community spread[.]" (ECF No. 28-4 at 3.) Thereafter, Count Basie submitted a claim under the Policy to Zurich for lost business income caused by its compliance with the Executive Orders. (ECF No. 1-1 ¶ 97.) Zurich determined Count Basie was entitled to recover under the Communicable Disease Business Income Coverage and issued payment in the amount of $100,000, allegedly representing the upper limit of the coverage. (*Id*. ¶¶ 98–99.) Zurich also determined Count Basie was not entitled to coverage for its loss of business income under any other provision of the Policy. (*Id.*)

On December 3, 2020, Count Basie filed a Complaint in the Superior Court of New Jersey, Law Division, Monmouth County, against Zurich. (ECF No. 5-1 at 7; ECF No. 6-1 at 7.) The Complaint seeks a declaratory judgment that Count Basie is entitled to recover: (1) under the Communicable Disease Business Income Coverage up to the Blanket Limits of Insurance in the amount of $1,900,001 for its business income losses at three insured premises, and $100,000 per occurrence at each of the other three insured premises, (2) under the Business Income Coverage for its business income losses at three insured premises up to the Blanket Limits of Insurance of

$1,900,001, and (3) under the Civil Authority Coverage up to the Policy limits for its business income losses and extra expenses at all of its insured properties. (ECF No. 1-1 ¶¶ 156–57.)

On January 12, 2021, Zurich removed this case from the state court to the United States District Court for the District of New Jersey. (ECF No. 1.) On February 2, 2021, Zurich filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5.) On February 8, 2021, Count Basie filed a Motion to Remand. (ECF No. 6.) Zurich's Motion to Dismiss was stayed pending the Court's decision on Count Basie's Motion to Remand. (ECF No. 14.) On March 22, 2021, Zurich filed an opposition to Count Basie's remand motion (ECF No. 15) to which Count Basie replied on March 31, 2021 (ECF No. 17). On April 7, 2021, the Court held oral argument on Count Basie's remand motion (ECF No. 18) and permitted simultaneous supplemental briefings, which were filed on April 21, 2021 (ECF Nos. 21, 22).

On August 24, 2021, the Court issued an Opinion and Order (the "August 2021 Opinion") denying Count Basie's motion to remand and ordering the parties to establish a briefing schedule for any motion to dismiss. (ECF Nos. 24–25.) On September 20, 2021, Zurich filed a Partial Motion to Dismiss Count Basie's Complaint. (ECF No. 28.) On October 18, 2021, Count Basie filed an opposition to the motion (ECF No. 29), and on November 8, 2021, Zurich replied (ECF No. 30).

## II.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations

5

omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 548 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear

that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220).

### III. DECISION

Count Basie seeks a declaration that it is entitled to coverage under the Business Income Coverage and the Civil Authority Coverage provisions of the Policy for losses it sustained during the COVID-19 pandemic. (ECF No. 1-1 ¶¶ 157–58.) Zurich argues Count Basie's claims for coverage under the Business Income Coverage and the Civil Authority Coverage provisions fail because: (1) the claims under those provisions are barred by the Microorganism Exclusion of the Policy; and (2) Count Basie has not alleged any "direct physical loss of or damage to property" to trigger coverage under either of those two provisions. (ECF No. 28-12 at 1–2.) The Court addresses each in turn.

### A.     Microorganism Exclusion

Zurich argues the Microorganism Exclusion unambiguously precludes Count Basie's claims for Business Income Coverage and Civil Authority Coverage. (ECF No. 28-12 at 11–12.) Specifically, Zurich argues Count Basie's claims for coverage related to business income losses due to the COVID-19 pandemic under the Business Income Coverage and the Civil Authority Coverage provisions of the Policy are barred by the Microorganism Exclusion. (*Id.*) Count Basie counters the Microorganism Exclusion is not enforceable because the exclusion is "inherently contradictory and ambiguous." (ECF No. 29 at 19–20.) Specifically, Count Basie argues a virus is not a microorganism and defining a virus as a microorganism is "highly confusing, inherently ambiguous and directly contradictory to the commonly understood meanings of microorganism and virus as defined in the dictionary." (*Id.* at 24.)

Under New Jersey law, insurance policy exclusions must be narrowly construed, and the burden is on the insurer to show the claim falls within the exclusion. *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006); *Feszchak v. Pawtucket Mut. Ins. Co.*, Civ. A. No. 06-0076, 2008 U.S. Dist. LEXIS 29295, at *7 (D.N.J. April 8, 2008); *Gibson v. Callaghan*, 730 A.2d 1278, 1283 (N.J. 1999); *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1013 (N.J. 1998). However, "[i]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (citing *Longobardi v. Chubb Ins. Co.*, 582 A.2d 1257, 1260 (N.J. 1990)). A genuine ambiguity exists "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Lee v. Gen. Accident Ins. Co.*, 767 A.2d 985, 987 (N.J. Super. Ct. App. Div. 2001) (citing *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979)). However, "[w]here the language of the policy is clear

and unambiguous, 'the court is bound to enforce the policy as it is written.'" *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 78 (D.N.J. 2020) (quoting *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. App. Div. 1994)). "An 'insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants.'" *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263, 1270 (N.J. 2017) (quoting *Fed. Ins. Co. v. Campbell Soup Co.*, 885 A.2d 465, 468 (N.J. Super. Ct. App. Div. 2005)). "Rather, courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous." *Flomerfelt*, 997 A.2d at 997 (quoting *Stafford v. T.H.E. Ins. Co.*, 706 A.2d 785, 789 (N.J. App. Div. 1998)).

Here, Count Basie raises many of the same arguments considered and rejected by the Court in its August 2021 Opinion. (ECF No. 24.) In the August 2021 Opinion, the Court determined "the phrasing of the Microorganism Exclusion to not be so confusing as to render it ambiguous."[2] (*Id.* at 12.) Count Basie does not raise new arguments for the Court to reconsider its earlier determination.[3] Rather, Count Basie argues the Microorganism Exclusion is ambiguous because a virus is not a microorganism, an argument the Court previously considered and rejected, finding: "Count Basie's assertion that a virus is generally not considered an organism is irrelevant, because

---

[2] The Microorganism Exclusion provides the insurer "will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of 'microorganisms,' unless resulting from fire or lightning." (ECF No. 5-1 at 12.) The Policy defines "microorganism" as "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, 'fungus,' wet or dry rot, virus, algae, or bacteria, or any by-product." (*Id.*)

[3] Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances. *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("[T]he [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case."); *Daramy v. Attorney Gen. of U.S.*, 365 F. App'x 351, 354 (3d Cir. 2010).

9

an insurance policy may adopt special definitions for its terms, even if they depart from the terms' common usage, and such special definitions do not automatically create an ambiguity." (*Id.* at 14.)[4] Indeed, the Court observed "a number of courts have found an exclusion clause, which recognizes a virus as an organism, to be unambiguous and enforceable." (*Id*. at 14 (citing *Cibus LLC v. Eagle W. Ins. Co.*, Civ. A. No. 20-277, 2021 U.S. Dist. LEXIS 12904, at *9–10, 13–14 (D. Ariz. Jan. 21, 2021) (finding that a pathogenic organisms exclusion, in which the term "pathogenic organisms" was defined as "any bacteria, yeast, mildew, virus," was "clear" in language and "prevented coverage of [p]laintiff's claim"); *Boxed Foods Co., LLC v. Cal. Cap. Ins. Co.*, 497 F. Supp. 3d 516, 522 (N.D. Cal. 2020) (finding a virus exclusion, in which the term "pathogenic organism" was defined to include a virus, was "not ambiguous" and "preclude[d] [p]laintiffs' claim for business income losses and extra expenses under the [c]ivil [a]uthority provision")); *Am.'s Kids, LLC v. Zurich Am. Ins. Co.*, Civ. A. No. 20-3520, 2021 U.S. Dist. LEXIS 188971, at *16 (N.D. Ill. Sep. 30, 2021) (finding the plaintiff's "claim for coverage independently fails under the Policy's microorganism exclusion clause"). Further, the Court, highlighted a district court's determination that a microorganism exclusion identical to the Microorganism Exclusion here was both "applicable" to the claim and "excluded coverage for [the plaintiff insured's] loss, cost or expense incurred" during the COVID-19 pandemic. (*Id.* at 14 (citing *Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*, 520 F. Supp. 3d 965, 978 (N.D. Ohio 2021)).

Count Basie relies on *Ungarean, v. CNA*, Civ. A. No. 20-6544, 2021 Pa. Dist. & Cnty. Dec. LEXIS 2, at *37 n.27 (Pa. Com. Pl. Allegheny Cnty. Mar. 22, 2021), for the proposition a

---

[4] *See D'Agostino v. First Trenton Indem. Co.*, Civ. A. No. 5518-05T2, 2007 N.J. Super. Unpub. LEXIS 1195, at *7 (N.J. Super. Ct. App. Div. Apr. 17, 2007) (concluding "the special definition of 'highway vehicle'" in an insurance policy "d[id] not introduce any ambiguity into the term 'vehicle,'" when "a 'motorcycle' [was] excluded from the special definition of 'highway vehicle,'" even though "in common usage, a 'motorcycle' is a 'vehicle'").

microbe exclusion may be ambiguous where the loss is caused by a virus. This reliance is misplaced as the facts here are distinguishable. In *Ungarean*, the subject policy did not include viruses within the defined term of "microbes" in its microbes exclusion. *Id.* at *33. The Policy at issue here includes viruses within the defined term of "microorganisms" in its Microorganism Exclusion. Therefore, because the Microorganism Exclusion is "specific, plain, clear, prominent, and not contrary to public policy," the exclusion is enforceable as written. *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 16 (N.J. 1997).

To the extent Count Basie contends "Zurich did not use the standard form of Virus Exclusion which it and other insurers utilize in other of their [sic] policies" (ECF No. 29 at 11), the argument has no bearing on whether the Microorganism Exclusion at issue is ambiguous. *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (holding a court "should not write for the insured a better policy of insurance than the one purchased") (citing *Vassiliu v. Daimler Chrysler Corp.*, 839 A.2d 863, 867 (N.J. 2004)). While Count Basie suggests alternative wording could have made the exclusion clearer, courts are tasked with enforcing an insurance policy as written, and not "'to make a better contract for either of the parties' than that which they chose to make for themselves." *Hebela v. Healthcare Ins. Co.*, 851 A.2d 75, 82 (N.J. App. Div. 2004) (quoting *Kampf v. Franklin Life Ins. Co.*, 161 A.2d 717, 720 (1960)); *see also Villamil v. Sentinel Ins. Co.*, 356 F. Supp. 3d 418, 423 (D.N.J. 2018) ("[W]here the language of the contract is clear, extrinsic evidence may not be considered."). Having determined the Microorganism Exclusion is not ambiguous, "the [C]ourt is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994).[5]

---

[5] Count Basie also argues the word "virus" in the Microorganism Exclusion "results in a definition which is contrary to the reasonable expectations of an ordinary insured." (ECF No. 29 at 15.) However, as addressed in its August 2021 Opinion, "the Court should not undertake the reasonable

11

Moreover, to the extent Count Basie contends "the Zurich Policy fails to comply with the Plain Language Act" (ECF No. 29 at 22), Count Basie fails to explain how the Plain Language Act renders the Microorganism Exclusion unenforceable. As the Court determined in its August 2021 Opinion, Count Basie is not an unsophisticated consumer, but a business corporation running at least six facilities. (ECF No. 24 at 21.) While Count Basie contends cross-referencing various forms in the Policy is confusing and a violation of the Plain Language Act, the argument does not render the Microorganism Exclusion ambiguous. *See Weitz v. Allstate Ins. Co.*, 642 A.2d 1040, 1041 (N.J. Super. Ct. App. Div. 1994) ("The fact that a policy is long, and that pertinent language is not contained on a single page, does not, in itself, render the policy structurally ambiguous."); *see also Chubb Custom Ins. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008) ("In attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route.").

Accordingly, Count Basie's claims for coverage related to business income losses due to the COVID-19 pandemic under both the Business Income Coverage and the Civil Authority Coverage provisions are barred by the Microorganism Exclusion.[6]

---

expectation inquiry when the Microorganism Exclusion is unambiguous." (ECF No. 24 at 21 (citing *State v. Signo Trading Int'l, Inc.*, 612 A.2d 932, 940 (N.J. 1992) ("[C]ourts should resort to the doctrine of reasonable expectations only when 'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'")).)

[6] Several courts have had similar issues and ruled in the same fashion. *See Del. Valley Plumbing Supply, Inc. v. Merchs. Mut. Ins. Co.*, 519 F. Supp. 3d 178, 182–83 (D.N.J. 2021); *N&S Rest.*, 499 F. Supp. 3d at 80–81; *Eye Care Ctr. of New Jersey, PA v. Twin City Fire Ins. Co.*, 522 F. Supp. 3d 72, 77 (D.N.J. 2021); *Blue Devil LLC v. Ace Prop. & Cas. Ins. Co.*, Civ. A. No. 20-12480, 2021 U.S. Dist. LEXIS 166886, at *19 (D.N.J. Sep. 2, 2021); *Metuchen Ctr. v. Liberty Mut. Ins. Co.*, Civ. A. No. 20-12584, 2021 U.S. Dist. LEXIS 141654, at *13 (D.N.J. July 29, 2021); *T&L Catering, Inc. v. Hanover Ins. Grp., Inc.*, Civ. A. No. 20-07934, 2021 U.S. Dist. LEXIS 131057, at *12 (D.N.J. July 14, 2021); *Quakerbridge Early Learning LLC v. Selective Ins. Co.*, Civ. A. No. 20-7798, 2021 U.S. Dist. LEXIS 63184, at *9 (D.N.J. Mar. 31, 2021); *Chester C. Chianese DDS LLC v. Travelers Cas. Ins. Co. of Am.*, Civ. A. No. 20-5702, 2021 U.S. Dist. LEXIS 59097, at *7

B. **Direct Physical Loss of or Damage to Property Requirement**

Zurich argues Count Basie has not pleaded a *prima facie* claim for coverage under the Business Income Coverage or the Civil Authority Coverage provisions. (ECF No. 28-12 at 20.) Specifically, Zurich contends Count Basie has failed to identify a "direct physical loss of or damage to property" resulting from a covered cause of loss to trigger coverage under either provision. (*Id.*) Count Basie argues the losses it sustained satisfies the "direct physical loss of or damage to property" requirement to trigger coverage under the Business Income Coverage and the Civil Authority Coverage provisions. (ECF No. 29 at 35–36.) Specifically, Count Basie contends "the phrase 'physical loss of or damage to' covered property can and does include 'loss of access, loss of use, and loss of functionality' of the property in the absence of any physical material alteration of the property." (*Id.*)

In the August 2021 Opinion, the Court explained the Business Income Coverage and the Civil Authority Coverage is triggered when there is "direct physical loss of or damage to" a property within one mile of Count Basie's insured premises. (ECF No. 24 at 19.) However, the Court then explained coverage under both provisions are subject to several exclusions under the Policy, including the Microorganism Exclusion. (*Id.*) Indeed, the Court concluded "whether or not the loss of use of Count Basie's insured premises is a direct loss or damage, the Microorganism Exclusion bars Count Basie's recovery under the Business Income Coverage and the Civil Authority Coverage, unless Count Basie could raise new grounds to prevent Zurich from enforcing the Microorganism Exclusion." (*Id.* at 21–22.) Having found the Microorganism Exclusion bars Count Basie from recovering under the Business Income Coverage and the Civil Authority

---

(D.N.J. Mar. 27, 2021); *Carpe Diem SPA, Inc. v. Travelers Cas. Ins. Co. of Am.*, Civ. A. No. 20-14860, 2021 U.S. Dist. LEXIS 57969, at *7 (D.N.J. Mar. 26, 2021).

13

Coverage provisions,[7] and having found Count Basie does not raise new grounds to prevent Zurich from enforcing the Microorganism Exclusion, the Court need not address whether Count Basie is entitled to coverage for suffering direct physical loss of or damage to the insured property. *See Physics v. Nationwide Ins.*, 524 F. Supp. 3d 372, 379–80 (D.N.J. 2021) ("[T]his argument puts the cart before the horse. Whether [p]laintiff suffered 'physical loss or damage' is a secondary inquiry. The primary inquiry is whether the alleged physical loss or damage was caused by a virus."); *Del. Valley Plumbing Supply, Inc. v. Merchs. Mut. Ins. Co.*, 519 F. Supp. 3d 178, 182 (D.N.J. 2021) (finding "that it is unnecessary to address" the interpretation of direct physical loss because the virus exclusion "clearly applies and bars coverage"); *N&S Rest.*, 499 F. Supp. 3d at 79 ("[T]he Court finds it unnecessary to decide whether Plaintiff's claim resulted from direct physical loss or damage because the Court finds that the Virus Exclusion plainly applies here, barring coverage."); *Physics v. Nationwide Ins.*, 524 F. Supp. 3d 372, 381 (D.N.J. 2021) (finding because the exclusion was enforceable, "the Court need not entertain the question of whether Plaintiff's alleged losses constitute 'direct physical loss . . . or damage'"); *Beach Glo Tanning Studio Inc. v. Scottsdale Ins. Co.*, Civ. A. No. 20-13901, 2021 U.S. Dist. LEXIS 102120, at *8 (D.N.J. May 28, 2021) (same). Accordingly, Zurich's Partial Motion to Dismiss Count Basie's claims for coverage under the Business Income Coverage and Civil Authority Coverage provisions is **GRANTED.**

---

[7] In the August 2021 Opinion, the Court held "the Microorganism Exclusion bars Count Basie's recovery under the Business Income Coverage." (ECF No. 24 at 19.) The Court also held the Executive Orders that resulted in Count Basie sustaining business income loss "'were issued as the direct result of COVID-19—a cause of loss that falls squarely within' the Microorganism Exclusion, which precludes the Executive Orders from the definition of a covered cause of loss, and renders the Civil Authority Coverage inapplicable." (*Id.* at 20 (citing *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*, 488 F. Supp. 3d 904 (N.D. Cal. 2020) (rejecting the plaintiff's argument that the covered cause of loss was the government shutdown orders, and finding the plaintiff's "theory for recovery under the [c]ivil [a]uthority [p]rovision fail[ed]")); *see also Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616 (E.D. Pa. 2020) (finding "the shutdown orders" were "excluded from the definition of covered cause of loss," because of a virus exclusion).

## IV. CONCLUSION

For the reasons set forth above, Zurich's Partial Motion to Dismiss is **GRANTED**. An appropriate order follows.

                                                   */s/ Brian R. Martinotti*
                                                   **HON. BRIAN R. MARTINOTTI**
                                                   UNITED STATES DISTRICT JUDGE

Dated:  December 17, 2021