**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COUNT BASIE THEATRE INC.,<br><br>Plaintiff,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendant. | Case No.: 2:21-cv-00615-EP-LDW |

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO COUNT BASIE THEATRE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT

**MOUND COTTON WOLLAN & GREENGRASS LLP**
Philip C. Silverberg
One New York Plaza, 44th Floor
New York, NY 10004
Tel. (212) 804-4200
psilverberg@moundcotton.com

Craig R. Rygiel
30A Vreeland Road, Suite 210
Florham Park, NJ 07932
Tel. (973) 494-0600
crygiel@moundcotton.com

*Attorneys for Defendant*
*Zurich American Insurance Company*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................ii

Preliminary Statement ....................................................................................................1

Legal Argument ....................................................................................................3

I. The CD Limit applies to CD Coverage....................................................................3

II. Count Basie's loss was caused by one occurrence. ....................................................6

III. The CD Limit applies "per occurrence," not "per premises." ..............................10

IV. Zurich has not waived any coverage defenses. ....................................................12

V. If the Court finds that Count Basie can evade the CD Limit, Count Basie's damages cannot be resolved as a matter of law. ....................................................15

Conclusion ....................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*,
676 F.2d 56 (3d Cir. 1982) .......... 9

*Arch Ins. Co. v. Harris*,
No. 18-362, 2019 WL 2016862 (N.D. Okla. May 7, 2019) .......... 4

*Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*,
854 A.2d 378 (N.J. 2004) .......... 7

*Band's Visit Nat'l Tour LLC v. Hartford Fire Ins. Co.*,
No. N22C-03-048, 2023 WL 8599939 (Del. Super Ct. Dec. 11, 2023) .......... 8

*Brenner Fin., Inc. v. Cinemacar Leasing*,
No. A-4393-10T3, 2012 WL 1448048 (N.J. Super. Ct. App. Div. Apr. 27, 2012) .......... 15

*Carpe Diem Spa, Inc. v. Travelers Cas. Ins. Co. of Am.*,
No. 20-14860, 2021 WL 1153171 (D.N.J. Mar. 26, 2021) .......... 8

*Catlin Specialty Ins. Grp. v. RFB, Inc.*,
No. 16-3135, 2017 WL 2493125 (D.S.C. June 8, 2017) .......... 4

*Causeway Auto., LLC v. Zurich Am. Ins. Co.*,
No. 20-8393, 2021 WL 486917 (D.N.J. Feb. 10, 2021) .......... 8

*Cole v. Jersey Cty. Med. Ctr.*,
72 A.3d 224 (N.J. 2013) .......... 12

*Cont'l Ins. Co. v. Beecham, Inc.*,
836 F. Supp. 1027 (D.N.J. 1993) .......... 13

*Count Basie Theatre Inc. v. Zurich Am. Ins. Co.*,
No. 21-615, 2021 WL 3732903 (D.N.J. Aug. 24, 2021) .......... 4

*Count Basie Theatre Inc. v. Zurich Am. Ins. Co.*,
No. 21-615, 2021 WL 5980344 (D.N.J. Dec. 17, 2021) .......... 4, 5, 6

*Dental Experts LLC v. Mass. Bay Ins. Co.*,
No. 20-5887, 2022 WL 2528104 (N.D. Ill. July 7, 2022) .......... 9

*Downs Ford, Inc. v. Zurich Am. Ins. Co.*,
No. 20-8595, 2021 WL 1138141 (D.N.J. Mar. 25, 2021) .......... 8

*FYT Supplies, Inc. v. Nautilus Ins. Co.*,
No. 20-6844, 2021 WL 321443 (D.N.J. Feb. 1, 2021) .......... 5

*Gaming Cap. Grp., LLC v. Zurich Am. Ins. Co.*,
No. CJ-2021-67 (Okla. Dist. Ct. Sept. 25, 2023)....................8

*Great Am. Ins. Co. v. Norwin Sch. Dist.*,
544 F.3d 229 (3d Cir. 2008)....................11

*Greenberg & Covitz v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
711 A.2d 909 (N.J. Super. Ct. App. Div. 1998), *remanded on other grounds*,
735 A.2d 569 (N.J. 1999)....................13

*Hatco Corp. v. WR Grace & Co. – Conn.*,
801 F. Supp. 1334 (D.N.J. 1992)....................14

*Jeffrey M. Brown Assocs., Inc. v. Interstate Fire & Cas. Co.*,
997 A.2d 1072 (N.J. Super. Ct. App. Div. 2010)....................12

*Knorr v. Smeal*,
836 A.2d 794 (N.J. 2003)....................13

*Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*,
278 A.3d 272 (N.J. Super. Ct. App. Div. 2022)....................8

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,
20 F.4th 311 (7th Cir. 2021)....................8

*McDade v. Siazon*,
32 A.3d 1122 (N.J. 2011)....................13

*Merchants Indem. Corp. v. Eggleston*,
179 A.2d 505 (N.J. 1962)....................15

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
15 F.4th 885 (9th Cir. 2021)....................8

*Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*,
160 A.3d 1263 (N.J. 2017)....................3

*Quakerbridge Early Learning LLC v. Selective Ins. Co. of New England*,
No. 20-7798, 2021 WL 1214758 (D.N.J. Mar. 31, 2021)....................8

*Stone v. Royal Ins. Co.*,
511 A.2d 717 (N.J. Super. Ct. App. Div. 1986)....................12

*T&L Catering Inc. v. Hanover Ins. Grp., Inc.*,
No. 20-7934, 2021 WL 2948425 (D.N.J. July 14, 2021)....................7

*Villamil v. Sentinel Ins. Co.*,
356 F. Supp. 3d 418 (D.N.J. 2018)....................6

*Willingboro Mall, Ltd. v. 240/242 Franklin Ave.*,
71 A.3d 888 (N.J. 2013) ..........................................................................................12

**Other Authorities**

10A Couch on Ins. § 148:57 (3d ed. 2023)..........................................................................7

**PRELIMINARY STATEMENT**

Count Basie Theatre Inc. ("Count Basie") acknowledges, as it must, that it previously received $100,000 from Zurich American Insurance Company ("Zurich")—the "per occurrence" limit (the "CD Limit") applicable to Communicable Disease Suspension of Operations—Business Income coverage ("CD Coverage"). Yet Count Basie now seeks to evade the CD Limit by throwing as many arguments as possible at the wall, hoping that just one will stick. Most of them are frivolous; none are meritorious.

Count Basie primarily argues that the $1.9 million Business Income Blanket Limit of Insurance (the "BI Limit") applies to CD Coverage rather than the $100,000 CD Limit, but this is nothing more than a made-for-litigation argument. In a strained interpretation of the policy wording, Count Basie essentially asks this Court to ignore the limit of insurance for CD Coverage expressly set forth in the Additional Coverages section of the Declarations even though the Policy does not provide a replacement limit for this coverage. The Court should reject this patently unreasonable interpretation of the Policy.

Count Basie alternatively argues that its loss was caused by each order issued by Governor Murphy, as if each was a separate occurrence subject to separate limits of $100,000. New Jersey courts have consistently rejected similar arguments from business owners, and have held that the COVID-19 virus is the singular cause of all government orders. Here, the CD coverage plainly *requires* that any government order preventing access to an insured premises must itself be issued "due to the threat of the spread of communicable disease." There is no dispute that there was one disease that led to all the orders, and therefore one "cause" and one "occurrence."

Even if one ignores this policy requirement, Count Basie still would not be entitled to

recover multiple limits, because at a minimum Governor Murphy's orders were a *series* of related orders, requiring all to be treated as one occurrence under the "occurrence" definition. Count Basie's position is not grounded in the plain language of the Policy, which provides that losses that are attributable directly or indirectly to one cause or a series of similar causes shall be treated as one occurrence. Because Governor Murphy's renewal orders are causally related to one another, Count Basie's loss is attributable to one cause or a series of similar causes.

Finally, Count Basie asks the Court to find that CD Coverage applies on a "per premises" basis rather than the "per occurrence" basis that is set forth in the Policy. Count Basie's entire argument rests on a deliberate misreading of the policy wording. Although the Policy states that the most Zurich will pay for CD Coverage "at any one 'premises" is the limit shown on the Declarations, it does not follow that the limit shown on the Declarations will apply separately at each premises sustaining loss. Instead, the fact that the CD Limit applies on a "per occurrence" basis means that it is the *most* Zurich will pay for all loss or damage attributable directly or indirectly to one cause or a series of similar causes, regardless of the number of insured premises sustaining loss as a result of that single occurrence.

Finally, Count Basie argues that its damages should be awarded on summary judgment. Even if Count Basie's policy interpretations were correct (and they are not), damages cannot be awarded at this procedural posture, particularly given the numerous flaws in Count Basie's damages model—flaws Count Basie's expert has effectively conceded in an untimely supplemental declaration.

For these and other reasons set forth herein, the Court should grant Zurich's Motion for Summary Judgment and deny Count Basie's Cross-Motion for Summary Judgment.

## LEGAL ARGUMENT

### I. The CD Limit applies to CD Coverage.

Count Basie's principal argument is that the $1.9 million BI Limit rather than the $100,000 CD Limit should apply to its claim. When the limits of liability are "construed in the 'factual context' to which they apply," it becomes clear that Count Basie has not offered a reasonable interpretation of the policy wording. *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263, 1272 (N.J. 2017).

As more fully discussed in Zurich' initial brief (Def.'s Br., ECF 80-1, at 13-14), the Additional Coverages section of the Declarations plainly states that CD Coverage is subject to a limit of $100,000 per occurrence:

| | | |
|---|---|---|
| HISTORIC PROPERTIES ADDITIONAL COVERAGES | | |
| HISTORIC CERTIFICATION EXPENSE | | NOT COVERED |
| DECONTAMINATION EXPENSE | $ | 25,000 PER OCCURRENCE |
| EMERGENCY VACATING EXPENSE | $ | 100,000 PER OCCURRENCE |
| COMMUNICABLE DISEASE SUSPENSION OF OPERATIONS | $ | 100,000 PER OCCURRENCE |

(Policy, ECF No. 80-4, at 35.) No provision of the Policy changes or replaces this express limit. This simple text ends any reasonable debate concerning the applicable limit for CD Coverage.

Count Basie's response to this straightforward argument is difficult to follow, but it appears to depend on the policy statement that the limit for CD Coverage "is included in, and not in addition to, any other applicable Limits of Insurance." (*Id.* at 170.) According to Count Basie, this provision somehow began a chain of policy interpretation that resulted in the CD Limit of $100,000 being deleted from the Policy and replaced with the BI Limit of $1.9 million. (*See* Pl.'s Br., ECF No. 83-1, at 13-20.) But Count Basie's anti-textual argument is founded on a misreading of the straightforward policy language. The statement that the CD Limit "is included in, and not in addition to, any other applicable Limits of Insurance" simply means that it cannot

be stacked with other available limits, as Zurich's Edwin Grassmuck testified at his deposition. (*See* Grassmuck Dep Tr., ECF No. 83-2, at 30 [47:24-48:10].) In other words, if a loss were somehow covered both by CD Coverage and the BI coverage, the most the insured could receive would be the policy limit of $1.9 million for business interruption loss due to physical loss or damage to property—not that limit *plus* the $100,000 CD Limit. Count Basie does not cite any authority suggesting that this language is confusing or ambiguous, and numerous courts have held that similar provisions should be applied according to their plain meaning. *See Arch Ins. Co. v. Harris*, No. 18-362, 2019 WL 2016862, at *6 (N.D. Okla. May 7, 2019) (holding that similarly worded provision is "unambiguous"); *Catlin Specialty Ins. Grp. v. RFB, Inc.*, No. 16-3135, 2017 WL 2493125, at *3 (D.S.C. June 8, 2017) (holding that similarly worded sublimit is "perfectly clear").[1]

Count Basie also seems to conflate the BI coverage provided by the Policy with CD Coverage. (*See* Pl.'s Br., ECF No. 83-1, at 14-17.) These two coverages, however, are not the same. For BI coverage to exist, Count Basie must show (among other things) that the suspension of its operations was "caused by direct physical loss of or damage to property." (Policy, ECF No. 80-4, at 137.) The Court has already held that Count Basie cannot make this showing as a matter

---

[1] Even if this provision were ambiguous, it should not be read against Zurich because "Count Basie is not an unsophisticated consumer, but a business corporation that runs at least six facilities." *Count Basie Theatre Inc. v. Zurich Am. Ins. Co.*, No. 21-615, 2021 WL 3732903, at *10 (D.N.J. Aug. 24, 2021) (ECF No. 24) (finding "Count Basie is not an unsophisticated consumer, but a business corporation that runs at least six facilities."); *Count Basie Theatre Inc. v. Zurich Am. Ins. Co.*, No. 21-615, 2021 WL 5980344, at *6 (D.N.J. Dec. 17, 2021) (ECF No. 32) ("As the Court determined in its August 2021 Opinion, Count Basie is not an unsophisticated consumer, but a business corporation running at least six facilities."). While Count Basie argues to the contrary in its cross-motion, it fails to note that it made this exact same argument when seeking to remand this action to state court and later when opposing Zurich's Rule 12(b)(6) motion. Nor does Count Basie mention that, each time, this very same argument was rejected by Judge Brian R. Martinotti. Based on Judge Martinotti's prior rulings, it is now the law of the case that the doctrines of *contra proferentem* and reasonable expectations do not apply because Count Basie is a sophisticated commercial insured.

of law. *See Count Basie*, 2021 WL 5980344, at *6. By contrast, CD Coverage is one of more than a dozen additional coverages that have separate elements and separate limits from the BI coverage. (*See* Policy, ECF No. 80-4, at 34-37, 137-40, 169-70.) Count Basie's argument would necessarily delete from the Policy all of the separately stated limits for these additional coverages.

Count Basie further argues that the CD Limit is ambiguous because two *different* coverages provided by the Historic Properties Additional Coverage form are listed in the Summary of Premises section of the Declarations, but the CD Limit is not. (*See* Pl.'s Br., ECF No. 83-1, at 17-20.) But the Policy makes clear that a specific limit listed in the Declarations will only be replaced if a different value for that limit is listed in the Summary of Premises section of the Declarations. (*See* Policy, ECF No. 80-4, at 35.) Count Basie's argument would turn this wording on its head. The inevitable outcome from Count Basie's proposed interpretation would be to eliminate any distinction between the limits for business income loss and the specifically identified limits for additional coverages, solely because each additional coverage was not enumerated in the Summary of Premises section of the Declarations. The Court cannot accept an interpretation that would render huge swaths of the Policy superfluous. *See, e.g.*, *FYT Supplies, Inc. v. Nautilus Ins. Co.*, No. 20-6844, 2021 WL 321443, at *8 (D.N.J. Feb. 1, 2021) ("[N]o interpretation should be adopted that renders any [policy provision] a nullity.").

Finally, Count Basie argues that Zurich could have used different language to make the policy terms clearer. (*See* Pl.'s Br., ECF No. 83-1, at 20-22.) Count Basie advanced a similar argument on Zurich's Rule 12(b)(6) motion, claiming Zurich should have used a version of the virus exclusion prepared by the Insurance Services Office rather than the one in its Policy. Rejecting this argument, Judge Martinotti explained: "While Count Basie suggests alternative

wording could have made the exclusion clearer, courts are tasked with enforcing an insurance policy as written, and not 'to make a better contract for either of the parties' than that which they chose to make for themselves." *Count Basie*, 2021 WL 5980344, at *5. So too here, because the limits of liability are not ambiguous, the court must "enforce the policy as it is written."[2] *Id.* (quoting *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994)).

In sum, the Court should find as a matter of law that the CD Limit applies to CD Coverage, and not the BI Limit.

## II. Count Basie's loss was caused by one occurrence.

If the BI Limit does not apply, Count Basie argues in the alternative that its loss should not be treated as a single occurrence. Essentially, Count Basie argues that the cause of its business income loss was the series of renewal orders issued by Governor Murphy in response to the ongoing threat posed by the spread of COVID-19, and not the ongoing threat posed by the spread of the virus itself. Count Basie is wrong on numerous grounds

To start, the cause of Count Basie's loss was the singular and ongoing threat presented by the COVID-19 virus. This conclusion follows directly from the language of the Policy and bedrock principles of insurance law. The Policy's CD Coverage does not apply unless a government order suspends the insureds operations, *provided that* the government order "must

[2] Because the limits of liability are not ambiguous, the Court must reject Count Basie's invitation to consult extrinsic evidence. *See Villamil v. Sentinel Ins. Co.*, 356 F. Supp. 3d 418, 423 (D.N.J. 2018) ("[W]here the language of the contract is clear, extrinsic evidence may not be considered."). Even if the Court reviewed the policies issued by Zurich to Count Basie for the following policy periods, the specific change highlighted by Count Basie is immaterial because it does not create an ambiguity. The sentence removed from the introductory paragraph of the Additional Coverage section of the Declaration reads "[i]f a specific coverage is shown at a 'premises' as "Included in Blanket Limit of Insurance", then that Blanket Limit of Insurance replaces, and is not in addition to, the Limit of Insurance shown below for that coverage." As discussed, nowhere in the Policy does it say that the limits of insurance for CD Coverage is Included in Blanket Limit of Insurance.

result from the discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at that 'premises' or 'reported unscheduled premises.'" (Policy, ECF No. 80-4, at 170.) In other words, the threat posed by the spread of a communicable disease such as COVID-19 is a required precondition before any CD Coverage is available. And as the entire world knows, the threat of the spread of COVID-19 was a single, continuing event during 2020—the period of Count Basie's claimed loss.

New Jersey law confirms that Count Basie's loss was caused by a single occurrence. New Jersey courts generally apply a proximate cause test to determine the cause of a loss. *See Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 854 A.2d 378, 385 (N.J. 2004); *see also* 10A Couch on Ins. § 148:57 (3d ed. 2023) ("Generally, absent a policy provision to the contrary, it is required that a loss be proximately caused by an insured risk or cause."). The pertinent question is "what was the predominant cause that produced the loss." *T&L Catering Inc. v. Hanover Ins. Grp., Inc.*, No. 20-7934, 2021 WL 2948425, at *4 (D.N.J. July 14, 2021) (citing *Franklin Packaging Co. v. Cal. Union Ins. Co.*, 408 A.2d 448, 449 (N.J. Super. Ct. App. Div. 1979)). The obvious, predominant, and but-for cause of Count Basie's suspended operations was the ongoing threat of the spread of COVID-19, which gave rise to every single one of the orders Count Basie cites.

Zurich's position is buttressed by the great weight of authority. Federal and state courts in New Jersey and throughout the rest of the country have addressed whether the COVID-19 virus or Governor Murphy's orders was the proximate cause of numerous plaintiffs' business income losses. These courts have consistently held that the COVID-19 virus is the predominant cause. *See T&L Catering*, 2021 WL 2948425, at *4 ("Courts have repeatedly recognized that the state closure orders are inextricably tied to the COVID-19 virus, and therefore, the predominant and

proximate cause of Plaintiff's business-related losses is the COVID-19 virus, not the closure orders that were issued in response to the virus."); *see also, e.g., Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, 278 A.3d 272 (N.J. Super. Ct. App. Div. 2022); *Quakerbridge Early Learning LLC v. Selective Ins. Co. of New England*, No. 20-7798, 2021 WL 1214758, at *4 (D.N.J. Mar. 31, 2021); *Carpe Diem Spa, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-14860, 2021 WL 1153171, at *3 (D.N.J. Mar. 26, 2021); *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 20-8595, 2021 WL 1138141, at *4 (D.N.J. Mar. 25, 2021); *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, No. 20-8393, 2021 WL 486917, at *6 (D.N.J. Feb. 10, 2021); *Band's Visit Nat'l Tour LLC v. Hartford Fire Ins. Co.*, No. N22C-03-048, 2023 WL 8599939 (Del. Super Ct. Dec. 11, 2023) (applying New Jersey law).[3]

Count Basie's cross-motion at most argues that CD Coverage is triggered by an order and therefore each order must be treated as a separate occurrence. This argument contradicts the language of the Policy, which defines "occurrence" to "include[] all losses or damages that are attributable directly or indirectly to one cause *or a series of similar causes*." (Policy, ECF No. 80-4, at 43 (emphasis added).) That the CD Coverage uses the term "order" does not transform a

---

[3] *See also, e.g.*, *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 321 (7th Cir. 2021) ("Here, the novel coronavirus causing the COVID-19 pandemic led directly to the issuance of the government orders, which the complaint alleges as the cause of the losses and expenses. … In other words, the virus set in motion an unbroken causal chain via the government orders to the purported losses and expenses."); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 894 (9th Cir. 2021) ("Nor does [the insured] dispute that the Stay at Home Orders that impacted [the insured's] business were issued in response to the COVID-19 pandemic, and the point is not debatable. … Though [the insured] argues it was the government orders that most directly caused its injury, [the insured] does not plausibly allege that 'the efficient cause,' i.e., the one that set others in motion, was anything other than the spread of the virus throughout California, or that the virus was merely a remote cause of its losses.") (citation omitted); *Gaming Cap. Grp., LLC v. Zurich Am. Ins. Co.*, No. CJ-2021-67, Order at 19 (Okla. Dist. Ct. Sept. 25, 2023) ("[T]he closure of the Insured Locations and resulting loss of revenue by Plaintiffs was 'caused' by the COVID-19 pandemic, not the individual [jurisdictions'] closure orders.") (attached as ECF No. 80-14).

single occurrence into multiple occurrences, as the Policy states that "words that are used in the plural tense include the singular tense (and vice versa)." (*Id.*) Instead, as discussed more fully in Zurich's initial brief, to determine the number of occurrences, the Court must determine whether "there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir. 1982). That is the case here, meaning that there is one "occurrence."

Count Basie fails to meaningfully distinguish the two cases relied upon by Zurich in its initial brief (each of which found that the plaintiff's business income losses stemmed from a single occurrence—the COVID-19 pandemic). Count Basie instead cites *Dental Experts LLC v. Massachusetts Bay Insurance Co.*, No. 20-5887, 2022 WL 2528104 (N.D. Ill. July 7, 2022), before arguing that this case "differs critically from the CD Coverage provided in the Policy." (Pl.'s Br., ECF No. 83-1, at 30.) Even if *Dental Experts* were relevant here, that court held that "executive orders causally related to one another *do not constitute separate occurrences*." *Dental Experts*, 2022 WL 2528104, at *4 (emphasis added).[4]

Finally, even if the Court assumes that Governor Murphy's orders are the proximate cause of Count Basie's loss, Count Basie fails to explain why that means its loss of business income should be treated as multiple occurrences. After all, the Policy defines "occurrence" to "include[] all losses or damages that are attributable directly or indirectly … a series of similar causes." (Policy, ECF No. 80-4, at 43.) The language of the orders demonstrates that each was issued as part of a single, continuing response to the ongoing threat posed by COVID-19 pursuant to the authority granted to Governor Murphy under the Emergency Health Powers Act.

---

[4] Although it is not relevant to this dispute, the *Dental Experts* court also held that orders issued by separate jurisdictions could be interpreted as separate occurrences. *See Dental Experts*, 2022 WL 2528104, at *4. This holding was incorrect because all of these orders arose out of the same occurrence—the COVID-19 pandemic.

It is equally undeniable that each renewal order was issued by Governor Murphy for the sole purpose of extending his emergency powers under the Emergency Health Powers Act to address the ongoing threat posed by COVID-19. Indeed, the plain text of the orders makes that fact readily apparent as Governor Murphy "adopted by reference" the "facts and circumstances" found in each prior renewal order. Accordingly, even if the orders themselves are considered the cause of Count Basie's loss, the Court should still find that the loss is properly treated as one occurrence because it is attributable directly or indirectly to one cause or a series of similar causes.

## III. The CD Limit applies "per occurrence," not "per premises."

Count Basie also argues that CD Coverage applies on a "*per premises*" basis rather than a "*per occurrence*" basis thereby entitling it to coverage for loss sustained separately at the Theatre and the Conservatory.[5] But Count Basie does not point to any language in the Policy supporting this position. Nor does it address the substance of Zurich's arguments on this point.

As discussed more fully in Zurich's initial brief (Def.'s Br, ECF No. 80-1, at 15-16), the CD Limit is expressly identified as a "per occurrence" limit. That is, it applies to all loss or damage that is attributable directly or indirectly to one cause or a series of similar causes. This is in contrast to other limits for additional coverages that apply on a "per premises" or "annual aggregate" basis. Count Basie does not explain why the Court should ignore this clear wording or the Third Circuit's directive that "[t]he use of different language to address the same or similar

[5] In its initial brief, Zurich separately argued that Count Basie was not entitled to coverage for loss sustained at two surface parking lots, which did not qualify as either premises or reported unscheduled premises. (*See* Def.'s Br., ECF No. 80-1, at 16-18.) Count Basie has not opposed this argument in its cross-motion, and it removed these loss amounts from the revised loss calculation prepared by its Chief Financial Officer. (*See* Franklin Dec., ECF No. 83-3, at ¶ 11 ("I have further subtracted from the previous summary the small amount of income for two parking lots which are not considered insured 'premises' under the Policy.").) Accordingly, the Court should find as a matter of law that Count Basie is not entitled to coverage for any loss sustained at these two parking lots.

issue … strongly implies that a different meaning was intended." *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 246 (3d Cir. 2008). Rather than grapple with the clear import and intent of the policy language used by Zurich, Count Basie summarily dismisses this argument as an "'after-the-fact' position." (Pl.'s Br., ECF No. 83-1, at 35.)

Count Basie also latches onto a single sentence in the CD Coverage provision that states "[t]he most we will pay under this Additional Coverage at any one "premises" … is the Limit of Insurance shown on the Declarations for" CD Coverage. (*Id.* at 31 (emphasis added).) Count Basie, however, deliberately misreads this sentence, giving its language outsized significance. This sentence in fact identifies the limit that will apply to covered loss sustained at any *one* premises. It says nothing about the limit that will apply if Count Basie sustains loss at multiple premises caused by a single occurrence.[6] Instead, the Policy refers to the limit of insurance shown on the Declarations, which states that the limit is "per occurrence." If that limit had applied on a "per premises" basis, then Count Basie would be correct that it was entitled to receive a separate limit at each insured premises sustaining loss. But it is not a "per premises" limit. It is a "per occurrence" limit, which, as previously explained, applies to all loss or damage that is attributable directly or indirectly to one cause or a series of similar causes.

In support of its position, Count Basie also relies on self-serving statements made by its insurance broker during the claim adjustment about how the provision should be interpreted as well as deposition testimony from Zurich's claims personnel about what steps were taken to investigate Count Basie's claimed loss. None of these statements, however, are relevant to the

[6] Count Basie also mistakenly argues that Zurich's position turns the CD Limit into an aggregate cap. This is plainly not the case. Zurich's interpretation of the CD Limit would not preclude Count Basie from obtaining CD Coverage for multiple, separate occurrences during a single policy period. Zurich's interpretation only upholds the plain wording of the Policy, which provides that the most Count Basie may recover is $100,000 in a single occurrence.

Court's consideration of this policy wording because—as Zurich's Peter Hogan testified—"the policy states it's $100,000 per occurrence." (Hogan Dep Tr., ECF No. 83-2, at 58 [84:14-20].) *See Stone v. Royal Ins. Co.*, 511 A.2d 717, 718 (N.J. Super. Ct. App. Div. 1986) (explaining "the basic rule is to determine the intention of the parties from the language of the policy"); *see also Jeffrey M. Brown Assocs., Inc. v. Interstate Fire & Cas. Co.*, 997 A.2d 1072 (N.J. Super. Ct. App. Div. 2010) ("'[A] court may look to extrinsic evidence as an aid to interpretation' only if there is ambiguity in the language of the insurance policy." (quoting *Chubb Custom Ins. Co. v. Prudential Ins. Co.*, 948 A.2d 1285, 1289 (N.J. 2008))).

Accordingly, the Court should find as a matter of law that the CD Limit applies on a "per occurrence" basis consistent with plain wording of the Policy. Because the CD Limit was exhausted by the loss sustained by Count Basie at the Theatre, it therefore is not entitled to coverage for any additional loss sustained at the Conservatory.

## IV. Zurich has not waived any coverage defenses.

As a last resort, Count Basie argues that Zurich has waived its coverage defenses, but this argument relies on a misapplication of the equitable doctrines of waiver and estoppel. These doctrines have occasionally been used by New Jersey courts to prevent an insurer from relying on policy defenses at trial that were not previously raised, but they have never been applied, as Count Basie suggests they be, to prevent an insurer from relying on a previously raised defense. The Court should therefore see this argument for what it is: a desperate attempt at trying to circumvent the plain language of the Policy.

"Waiver is the voluntary and intentional relinquishment of a known right." *Willingboro Mall, Ltd. v. 240/242 Franklin Ave.*, 71 A.3d 888, 897-98 (N.J. 2013). "Waiver is never presumed." *Cole v. Jersey Cty. Med. Ctr.*, 72 A.3d 224, 230 (N.J. 2013). Instead, "[a]n effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those

rights. … The party waiving a known right must do so clearly, unequivocally, and decisively." *Knorr v. Smeal*, 836 A.2d 794, 798 (N.J. 2003). Equitable estoppel is a related doctrine, involving "conduct, either express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law." *McDade v. Siazon*, 32 A.3d 1122, 1132 (N.J. 2011) (quoting *Dambro v. Union Cnty. Park Comm'n*, 327 A.2d 466, 570 (N.J. Super. Ct. Law Div. 1974)).

In support of its argument that Zurich has waived its coverage defenses, Count Basie quotes out-of-context another judge in this district finding that "[a]n insurer that does not disclaim on a certain ground has no right to raise that ground in a declaratory action initiated to determine if there is coverage." *Cont'l Ins. Co. v. Beecham, Inc.*, 836 F. Supp. 1027, 1045 (D.N.J. 1993). In *Beecham*, the insured argued that the insurance company "raised [three] coverage defenses … for the first time in its motion for summary judgment and that, because [it] had previously disclaimed coverage on other specified grounds but not these, it ha[d] waived or [wa]s estopped from arguing these 'new' defenses." *Id.* These defenses were different in kind, and not merely degree, from the defenses previously raised by the insurer. *See id*. The district court agreed with the insured, finding that "[b]ecause [the insurance company] never alerted [the insured] that it would seek to deny coverage on these grounds, it cannot, after the close of discovery and prior to trial, invoke them now." *Id.*[7]

Unlike the insurance company in *Beecham*, Zurich has not raised any new coverage defenses for the first time in its summary judgment motion. Zurich raised the CD Limit in its partial denial letter and in its Answer, filed almost two years ago. (Answer, ECF No. 36, at 26-

[7] *See also Greenberg & Covitz v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 711 A.2d 909, 916 n.2 (N.J. Super. Ct. App. Div. 1998) ("If, as appears to be the fact, no detrimental reliance was involved [in *Beecham*], we respectfully suggest that the decision misinterprets New Jersey law, and we disagree with it."), *remanded on other grounds*, 735 A.2d 569 (N.J. 1999).

27.) And throughout this litigation, Zurich has repeatedly notified Count Basie that it is not entitled to further payment for CD Coverage because it exhausted the CD Limit. Zurich has never asserted that other provisions or exclusions bar Count Basie's recovery, and Count Basie does not argue otherwise.

Instead, Count Basie asserts that Zurich should be barred from relying on the CD Limit merely because it purportedly failed to respond with sufficient detail to all of the increasingly absurd positions that were presented by its outside counsel in a series of argumentative letters regarding the interpretation of the CD Limit. Count Basie, however, simply cannot claim to be unaware of Zurich's position that the CD Limit barred any further recovery. This fact is fatal to its waiver argument as there is no evidence Zurich intended to relinquish this defense.

Likewise, Count Basie has failed to show how it was prejudiced by Zurich's alleged failure to adequately respond to its numerous attempts to evade the CD Limit. This is particularly the case as Count Basie's arguments at that time, like now, focused exclusively on why the CD Limit did not apply, demonstrating it was well aware that Zurich's position was that the claim had been fully paid due to the CD Limit. *See Hatco Corp. v. WR Grace & Co. – Conn.*, 801 F. Supp. 1334, 1363 (D.N.J. 1992) (finding a blanket reservation of rights letter preserved the insurance company's coverage defenses and rejecting the insured's estoppel argument because it was "a sophisticated party well-represented by legal counsel" that could not have misunderstood the import of that letter). Count Basie has not submitted any evidence suggesting it was confused about Zurich's coverage position or detrimentally relied on an erroneous understanding. Quite the opposite, Count Basie's litigation conduct confirms Count Basie would not have done anything differently even if it could somehow have been confused about this issue (and it was not). Thus, Count Basie cannot show that it sustained any cognizable prejudice, which is an

"essential ingredient" of estoppel. *Merchants Indem. Corp. v. Eggleston*, 179 A.2d 505, 512 (N.J. 1962).

At bottom, there is simply no basis to find that Zurich has waived any of its defenses.

## V. If the Court finds that Count Basie can evade the CD Limit, Count Basie's damages cannot be resolved as a matter of law.

If the Court finds that Count Basie can evade the CD Limit and recover more than the $100,000 previously paid by Zurich, Count Basie also asks this Court to resolve its damages claim as a matter of law and award the full blanket BI Limit. The Court cannot do so at this procedural juncture.

Typically, the quantum of damages is a factual determination inappropriate for summary judgment. *See Brenner Fin., Inc. v. Cinemacar Leasing*, No. A-4393-10T3, 2012 WL 1448048, at *9 (N.J. Super. Ct. App. Div. Apr. 27, 2012) (observing that "the quantum of damages is generally a question of fact, best left to the factfinder"). Here, there are questions of fact due to (at a minimum) the conflicting damages models put forward by Count Basie's own expert. Count Basie's damages valuation is based on a declaration prepared by Karen Franklin, its Chief Financial Officer, to show that its loss exceeds the $1.9 million BI Limit. But Ms. Franklin's untimely declaration[8] contradicts the opinions she offered earlier in this litigation, when she opined that Count Basie lost $5.6 million at the Theatre and $14,640.99 at the Conservatory.

Ms. Franklin changed her opinions after Zurich's expert, Stephen M. Gregoire, of J.S. Held, LLC, identified numerous issues with her loss calculations. These included minor issues like double-counting certain revenue and other simple accounting errors, but they also included several more significant issues. (*See* Gregoire Rep., ECF No. 85-3, at 5-8.) Most importantly, the

[8] The first time Zurich received the revised loss calculation was when it was filed as an exhibit to Ms. Franklin's declaration in support of Count Basie's cross-motion in violation of Rule 26(e). Zurich sought leave to file a motion to strike the supplemental expert report under Rule 37 with Judge Wettre on December 13, 2023. (*See* Dec. 13 Ltr., ECF No. 84.)

Policy defines business income as "net income plus continuing expenses." By focusing solely on revenue, Ms. Franklin failed to account for saved and avoided expenses during the loss period, notwithstanding the fact that these amounts are required to determine net income, *i.e.*, the net profit or loss that Count Basie would have earned or incurred before taxes. Ms. Franklin's revised spreadsheets were prepared to address this precise issue, a clear admission that her original calculation failed to comply with the policy terms.

Ms. Franklin's new opinion also depends on numerous disputed questions of fact that cannot be resolved on summary judgment. These issues include: (1) the value of other revenue Count Basie earned while its premises were closed as a result of COVID-19, which mitigated Count Basie's loss; (2) the accounting of Count Basie's Payroll Protection Program loan; (3) the proper comparator to determine Count Basie's lost revenue, given that its facility was closed for several years before COVID due to renovations; and (4) Ms. Franklin's general credibility given the conceded errors in her work.

Because of these numerous significant errors in Ms. Franklin's calculations, the Court cannot award summary judgment on the basis of her untimely declaration.

## CONCLUSION

For the foregoing reasons, the Court should grant Zurich's Motion for Summary Judgment and deny Count Basie's Cross-Motion for Summary Judgment.

Respectfully submitted,

**MOUND COTTON WOLLAN & GREENGRASS LLP**

Dated: December 13, 2023

By: *_/s/ Philip C. Silverberg_*
Philip C. Silverberg
One New York Plaza, 44th Floor
New York, NY 10004
Tel. (212) 804-4200
psilverberg@moundcotton.com

Craig R. Rygiel
30A Vreeland Road, Suite 210
Florham Park, NJ 07932
Tel. (973) 494-0600
crygiel@moundcotton.com

*Attorneys for Defendant Zurich American Insurance Company*