<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COUNT BASIE THEATRE INC., | Civil Action No. 21-00615 (JKS)(LDW) |
| Plaintiff, | |
| v. | **OPINION** |
| ZURICH AMERICAN INSURANCE COMPANY, | **May 29, 2024** |
| Defendant. | |

**SEMPER**, District Judge.

Before the Court is Defendant Zurich American Insurance Company's ("Zurich") Motion for Summary Judgment (ECF 80) and Plaintiff Count Basie Theatre Inc.'s ("Count Basie") Cross-Motion for Summary Judgment (ECF 83), pursuant to Federal Rule of Civil Procedure 56. The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Rule 78.1(b). For the following reasons, the Court **GRANTS** Zurich's Motion for Summary Judgment and **DENIES** Count Basie's Cross-Motion for Summary Judgment.

### I.    BACKGROUND[1]

####    A.  The Insurance Policy

---

[1] The factual and procedural backgrounds of this matter are well known to the parties and were previously recounted by the Court in its Opinions denying Count Basie's Motion to Remand (ECF 24) and granting Zurich's Partial Motion to Dismiss (ECF 32.) Therefore, the Court includes only the facts and procedural background relevant to these Motions. The facts and procedural background relevant to these Motions are drawn from the Complaint, (ECF 1-1, "Compl."), Zurich's Motion for Summary Judgment (ECF 80, "Zurich MSJ"), Count Basie's Opposition and Cross-Motion for Summary Judgment, (ECF 83, "Count Basie MSJ"), both parties' submissions regarding undisputed material facts (ECF 80-15, "Zurich SOMF") (ECF 83-4, "Count Basie SOMF"), and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Count Basie is a non-profit corporation based in Red Bank, New Jersey. (*See* Compl. ¶ 1; Zurich SOMF ¶ 1.) Zurich American issued commercial insurance policy number CPO 0210427-03 to Count Basie (the "Policy"), which provided coverage beginning on November 1, 2019 through November 1, 2020, and included both general liability and property coverage parts. (*See* ECF 80-4 at 15.) The Policy insured three premises located in Red Bank, New Jersey under the Commercial Property Coverage Part: (1) 97-111 Monmouth Street, which contained the Count Basie Center for the Arts (the "Theatre"); (2) 65 Chestnut Street, which house the Count Basie Center's Monmouth Conservatory of Music (the "Conservatory"); and (3) 117 Monmouth Street, which was a storage garage. (*See* Compl. ¶¶ 6-9; ECF 80-4 at 30-32.) Count Basie also leased two surface parking lots from third parties located at 90 Monmouth Street and 84 Maple Avenue for use during performances at the Theatre. (*See* Compl. ¶¶ 10, 12; ECF 80-4 at 30-32.) However, Count Basie did not purchase property insurance from Zurich for those two locations. (*See* ECF 80-4 at 30-32; Zurich SOMF ¶ 5.) Rather, those two locations were only insured with respect to the Policy's general liability coverage part. (Zurich SOMF ¶ 6.)

The Policy sets forth the Business Income Coverage, which provides:

> We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration."** The **"suspension"** must be caused by direct physical loss of or damage to property at a **"premises"** at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a **"covered cause of loss."** We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that **"premises."**

> (ECF 80-4 at 137.)

The Policy set the Business Income Blanket Limit of Insurance as $1,900,001. (*Id.* at 33.) The Policy further provides:

> The above Limit of Insurance is the most we will pay in any one occurrence for all loss of **"business income"** at **"premises"** for which the Limit of Insurance is shown as Included in Blanket Limit of Insurance. If **"business income"** coverage does not

apply at any specific **"premises"**, the Limit of Insurance will show as Not Covered for those **"premises"**. If a more specific Limit of Insurance is shown for **"business income"** at a **"premises"**, that Limit of Insurance replaces and is not in addition to, the Blanket Limit of Insurance.

(*Id.*)

The Policy also contains numerous Additional Coverages. (ECF 1-1 ¶ 20.) Under the Historic Properties Additional Coverages, Zurich provided Count Basie with Communicable Disease Business Income Coverage. (ECF 80-4 at 169-70.) The Communicable Disease Business Income Coverage provides:

> If the BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE) is included in this Commercial Property Coverage Part, the coverage provided at a **"premises"** or **"reported unscheduled premises"** will also cover the actual loss of **"business income"** you sustain resulting from the necessary **"suspension"** of your **"operations"** if the **"suspension"** is caused by an order of an authorized public health official or governmental authority that prohibits access to the **"premises"** or **"reported unscheduled premises"**, or a portion of that **"premises"** or **"reported unscheduled premises"**. That order must result from the discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at that **"premises"** or **"reported unscheduled premises".**
>
> Coverage provided applies only to the actual loss of **"business income"** you sustain beginning 24 hours after you receive notice of an order by an authorized public health officials or governmental authority that results in the necessary **"suspension"** of your **"operations".** The coverage provided ends when an authorized public health official or governmental authority authorizes you to resume normal **"operations"**, or after 90 days, whichever is earlier.
>
> The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Communicable Disease Suspension of Operations—Business Income.
>
> This Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

(*Id.*)

The Policy sets forth Limits of Insurance for the Additional Coverages. (*See id.* at 34-37.)

The Policy provides:

Limits of Insurance applicable at a **"premises"** that differ from those indicated below will be shown under the Summary of Premises section of this Declarations for that **"premises"**. Those Limits of Insurance replace, and are not in addition to, the Limits of Insurance shown below for those specified coverages and **"premises"**. If any Additional Coverages do not apply at any specific **"premises"**, the Limit of Insurance will show as Not Covered for those **"premises"**. If a specific coverage is shown at a **"premises"** as 'Included in the Blanket Limit of Insurance', then that Blanket Limit of Insurance replaces, and is not in addition to, the Limits of Insurance shown below for that coverage.[2]

(*Id.* at 35.)

The Policy provides the Limit of Insurance for Communicable Disease Business Income Coverage

("CD Limit") is "100,000 PER OCCURRENCE[.]" (*Id.*) The Policy defines an "occurrence" to

include[] all losses or damages that are attributable directly or indirectly to one cause or a series of similar causes. All such losses or damages will be treated as one cause. However, if occurrence is specifically defined in a Coverage Form, that definition applies to the insurance provided by that Coverage Form and any endorsements to that Coverage Form.

(*Id.* at 43.) [3]

---

[2] The Policy defines a "premises" as, in relevant part, "[a] location scheduled on the Declarations for this Commercial Property Coverage Part." (ECF 80-4 at 65.)

[3] The Communicable Disease Business Income Coverage does not specifically define "occurrence" in the Coverage Form. "Occurrence" is specifically defined in other portions of the policy. For example, in the Commercial General Liability Coverage Form, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (ECF 80-4 at 200.) Additionally, the Crime Coverage Form defines "occurrence" as

    a.    Under Employee Theft Coverage:
        1) An individual act;
        2) The combined total of all separate acts whether or not related; or
        3) A series of acts whether or not related;
        committed by an **"employee"** acting alone or in collusion with other persons, during the policy period shown on the Declarations before such policy period, or both.
    b.    Under Forgery or Alteration Coverage:
        1)    An individual act;
        2)    The combined total of all separate acts whether or not related; or
        3)    A series of acts whether or not related;
        committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the policy period shown on the Declarations, before such period, or both.
    c.    Under all other coverages in this Coverage Form:
        1)    An individual act;
        2)    The combined total of all separate acts whether or not related; or
        3)    A series of acts whether or not related;
        committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the policy period shown on the Declarations, before such period, or both.
    (*Id.* at 109.)

### B.  The Executive Orders

In March 2020, Governor Murphy of the State of New Jersey issued a series of executive orders (the "Executive Orders"), which Count Basie alleges to have prohibited access to its business facilities.[4] (ECF 1-1 ¶¶ 27-35.) On March 9, 2020, Governor Murphy issued Executive Order No. 103 and declared "a Public Health Emergency and State of Emergency exist[ed] in the State of New Jersey[.]" (ECF 80-5 at 4.) Thereafter, Executive Order No. 104, dated March 16, 2020, ordered, among other things, the closure of "[e]ntertainment centers, including but not limited to, movie theaters, performing arts centers, other concert venues, and nightclubs[,]" effective March 16, 2020 at 8:00 p.m. (ECF 80-6 at 7-8.)  Executive Order No. 107, dated March 21, 2020, ordered that all New Jersey residents "shall remain home" unless they satisfied certain exceptions and continued to order the closure of "[e]ntertainment centers, including but not limited to, movie theaters, performing arts centers, other concert venues, and nightclubs." (ECF 80-7 at 6, 9.)

Thereafter, each month Governor Murphy entered additional executive orders,[5] which "DECLARE[D] and PROCLAIM[ED] that the Public Health Emergency declared in Executive Order No. 103 (2020) pursuant to the [Emergency Health Powers Act], N.J.S.A. 26:14-1, *et seq*., continues to exist throughout the State of New Jersey[.]" (ECF 80-8 at 5; ECF 80-9 at 5; ECF 80-10 at 6; ECF 83-2 at 179; ECF 83-2 at 186; ECF 83-2 at 198; ECF 83-2 at 216.) Each of the Executive Orders directed that "[a]ll Executive Orders adopted in whole or in part based on the

---

[4] Count Basie was able to resume its business operations at the Theatre when it partially opened the Vogel, a smaller venue adjoining the Theatre, at a smaller capacity on October 22, 2020; and ultimately, it resumed operations at the Theatre on December 12, 2020. (Count Basie SOMF ¶ 5.) Count Basie was able to resume its operations at the Conservatory on July 22, 2020. (*Id.*)

[5] Executive Order No. 119, dated April 7, 2020, Executive Order No. 138, dated May 6, 2020, Executive Order No. 151, dated June 4, 2020, Executive Order No. 162, dated July 2, 2020, Executive Order No. 171, dated August 1, 2020, Executive Order No. 180, dated August 27, 2020, and Executive Order No. 186, dated September 25, 2020. (ECF 80-8 at 5; ECF 80-9 at 5; ECF 80-10 at 6; ECF 83-2 at 179; ECF 83-2 at 186; ECF 83-2 at 198; ECF 83-2 at 216.)

authority under the [Emergency Health Powers Act] to respond to the Public Health Emergency presented by the COVID-19 outbreak remain in full force and effect." (ECF 80-8 at 6; ECF 80-9 at 6; ECF 80-10 at 6; ECF 83-2 at 179; ECF 83-2 at 186; ECF 83-2 at 198; ECF 83-2 at 216.) Each of the Executive Orders also referenced Executive Order No. 103's declaration of a Public Health Emergency and stated "the facts and circumstances of which are adopted by reference herein[.]" (ECF 80-6 at 2; ECF 80-7 at 2; ECF 80-8 at 2; ECF 80-9 at 2; ECF 80-10 at 2; ECF 83-2 at 175; ECF 83-2 at 182; ECF 83-2 at 194; ECF 83-2 at 212.) Executive Order No. 244, dated June 4, 2021, lifted the Public Health Emergency declared in Executive Order No. 103.

### C. Count Basie's Insurance Claim

On March 16, 2020, Count Basie notified Zurich that it had sustained losses due to the restrictions imposed by Governor Murphy in response to the COVID-19 pandemic and claimed coverage for these losses under the Policy. (ECF 80-11 at 2.) In a May 1, 2020 letter, Zurich responded to Count Basie's insurance claim and indicated: "[T]he Policy provides limited coverage for the suspension of operations as a result of a communicable disease, although there is no coverage for loss of income under other sections of the Policy." (ECF 80-12 at 2.) As such, Zurich indicated Count Basie was entitled to coverage pursuant to the Communicable Disease Business Income Coverage and would be sent a check for $100,000. (*Id.* at 3.) In May 2020, Zurich paid Count Basie $100,000. (Zurich SOMF ¶ 28.)

In a June 18, 2020 letter, Count Basie outlined its position that (i) it was the Executive Orders that triggered the business income coverage, (ii) each Executive Order constituted a separate occurrence, and (iii) there was coverage up $100,000 per occurrence at any "premises" or "reported unscheduled premise." (ECF 83-2 at 81-88.) In a July 21, 2020 letter, Zurich responded and indicated the Policy provided that there was only one occurrence and as such, Count Basie was only entitled to $100,000. (*Id.* at 90-93.)  In a July 29, 2020 letter, Count Basie reiterated its

position and amended its claim to assert a claim for the Blanket Limits of Business Income Coverage. (*Id.* at 95-100.) On August 6, 2020, Zurich emailed Count Basie's counsel advising it disagreed with its position in the June 18, 2020 and July 29, 2020 letters and Zurich's "position has not changed." (*Id.* at 50.) Thereafter, in an August 14, 2020 letter, Count Basie responded to Zurich's August 6, 2020 email and advised that Zurich's email and its claims handling violated New Jersey's Unfair Claims Settlement Practices Act, N.J.S.A. 17:29B-4(a). (*Id.* at 116-24; Count Basie SOMF ¶ 43.) In a letter dated September 2, 2020, Zurich's New Jersey Appeal Panel reviewed Zurich's appeal of its claim and found:

> The Panel reviewed the claim, policy, and coverage decision by the Claims Professional and found no disagreement in the coverage determination. We refer to the [P]olicy's Commercial Property Coverage Part Declarations, Historic Properties Additional Coverages, Communicable Disease Suspension of Operations Limit which provides a limit of $100,000 per occurrence.
>
> Said limit has been paid which was also accompanied with a detailed explanation memorialized in a latter dated May 1, 2020.

(ECF 83-2 at 102.)

### D.  Procedural History

On December 3, 2020, Count Basie filed a Complaint in the Superior Court of New Jersey, Law Division, Monmouth County, against Zurich. (ECF 1-1.) The Complaint seeks a declaratory judgment that Count Basie is entitled to recover: (1) under the Communicable Disease Business Income Coverage up to the Blanket Limits of Insurance in the amount of $1,900,001 for its business income losses at three insured premises, and $100,000 per occurrence at each of the other three insured premises, (2) under the Business Income Coverage for its business income losses at three insured premises up to the Blanket Limits of Insurance of $1,900,001, and (3) under the Civil Authority Coverage up to the Policy limits for its business income losses and extra expenses at all

of its insured properties.[6] (ECF 1-1 ¶¶ 156-57.) On January 12, 2021, Zurich removed this case from the state court to the United States District Court for the District of New Jersey. (ECF 1.)

On October 27, 2023, Zurich filed its motion for summary judgment arguing, *inter alia*, that: (1) Count Basie's losses resulted from one cause – the ongoing threat of the spread of COVID-19 and are subject to the single per-occurrence limit set forth in the Communicable Disease Business Income Coverage provision; (2) the CD Limit, not the Business Income Blanket Limit of Insurance, applies to Communicable Disease Business Income Coverage; and (3) the CD Limit does not apply separately to each premises. (ECF 80, Zurich Br. at 9-19.) On November 27, 2023, Count Basie filed its cross-motion for summary judgment and opposition to Zurich's motion arguing, *inter alia*, that: (1) the Business Income Blanket Limit of Insurance applies to the Communicable Disease Business Income Coverage; (2) Count Basie's losses resulted from each of the Executive Orders shutting down its business, not the ongoing threat of the spread of COVID-19; (3) the CD Limit applies separately to each premises; (4) Count Basie is entitled to recover the Business Income Blanket Limit of Insurance in the amount of $1,900,001 or alternatively $800,000 for its business income loss at the Historic Theatre and $31,452.80 for its business income loss at the Conservatory; and (5) Zurich cannot rely upon defenses that were not set forth in its partial denial letter. (ECF 83-1, Count Basie Br. at 11-40.) Both parties filed replies. (ECF 85; ECF 91.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "'there is no genuine issue as to any material fact [and] the moving party is entitled to judgment as a matter of law.'" *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204

---

[6] After Zurich filed a Partial Motion to Dismiss Count Basie's Complaint, (ECF 28), the Court granted Zurich's Partial Motion to Dismiss Count Basie's claims for coverage under the Business Income Coverage and Civil Authority Coverage Provisions on December 17, 2021.

(3d Cir. 2000) (alteration in original) (quoting F. R. Civ. P. 56(a)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences "in the light most favorable to the non-moving party." *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).[7]

## III.   DISCUSSION

The Court begins its analysis by outlining the basic principles for interpreting insurance policies. The interpretation of an insurance policy is a question for the Court to decide as a matter of law. *Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am.*, 559 F. Supp. 2d 504, 510 (D.N.J. 2008). "Insurance policies are construed in accordance with principles that

[7] A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. at 247-48.

9

govern the interpretation of contracts; the parties' agreement 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'" *Memorial Props., LLC v. Zurich Am. Ins. Co.*, 46 A.3d 525, 532 (N.J. 2012) (quoting *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010)). "In assessing the meaning of provisions in an insurance contract, courts first look to the plain meaning of the language at issue." *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263, 1270 (N.J. 2017) (citing *Chubb Custom Ins. Co v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008)). "If the language is clear, that is the end of the inquiry." *Id.* "[I]n the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." *Id.* (internal quotation marks and citation omitted)

"When an ambiguity exists, courts should interpret the contract in accordance with the 'reasonable expectations' of the insured." *Shotmeyer v. N.J. Realty Title Ins. Co.*, 948 A.2d 600, 605 (N.J. 2008) (quoting *Performance Ins. Co. v. Jones*, 887 A.2d 146, 152 (N.J. 2005)); *see Memorial Props., LLC*, 46 A.3d at 532 ("The terms of insurance contracts are given their plain and ordinary meaning, with ambiguities resolves in favor of the insured.") (internal quotations marks and citations omitted). Still, "courts will not manufacture an ambiguity where none exists" and "[a]n insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." *Oxford Realty Grp. Cedar*, 160 A.3d at 1270 (internal quotations marks and citations omitted).

### A. The Applicable Limit of Insurance for the Communicable Disease Business Income Coverage is $100,000 Per Occurrence.

The parties dispute the limit of insurance that is applicable for Count Basie's losses pursuant to the Communicable Disease Business Income Coverage. Zurich argues the CD Limit of $100,000 per occurrence applies to Count Basie's losses. (Zurich Br. at 13-15.) In contrast,

Count Basie contends the Business Income Blanket Limit of Insurance of $1,900,001 applies to the Communicable Disease Business Income Coverage. (Count Basie Br. at 11-22.)

Applying the aforementioned principles for interpreting insurance policies, Count Basie's assertion that the Business Income Blanket Limit of Insurance applies to Communicable Disease Business Income Coverage is ultimately untenable given the plain terms of the Policy. After the Court granted Zurich's Partial Motion to Dismiss, the only remaining claim for coverage is pursuant to the Communicable Disease Business Income Coverage. (*See* ECF 1-1; ECF 32.) Regarding the Limits of Insurance for Additional Coverages, the Policy provides:

> Limits of Insurance applicable at a **"premises"** that differ from those indicated below will be shown under the Summary of Premises section of this Declarations for that **"premises"**. Those Limits of Insurance replace, and are not in addition to, the Limits of Insurance shown below for those specified coverages and **"premises"**. If any Additional Coverages do not apply at any specific **"premises"**, the Limit of Insurance will show as Not Covered for those **"premises"**. If a specific coverage is shown at a **"premises"** as 'Included in the Blanket Limit of Insurance', then that Blanket Limit of Insurance replaces, and is not in addition to, the Limits of Insurance shown below for that coverage.

> (ECF 80-4 at 35.)

Under the Policy, the Limit of Insurance for the Communicable Disease Business Income Coverage is "$100,000 PER OCCURRENCE." (*Id.*) The Summary of Premises section of the Declarations for the Theatre, the Conservatory, and 117 Monmouth Street does not reference the Communicable Disease Business Income Coverage. (*Id.* at 30.) The Declarations also do not state the Communicable Disease Business Income Coverage is "Included in the Blanket Limit of Insurance." (*Id.*) Rather, the Summary of Premises section lists limits of insurance for other coverages, such as real property, personal property, business income, and earth income. (*Id.*)  As there is no reference to the Communicable Disease Business Income Coverage in the Summary of Premises section of the Declarations, a plain reading of the Policy indicates the applicable limit of insurance for Communicable Disease Business Income Coverage is the CD Limit.

Notwithstanding this language, Count Basie raises several bases for finding ambiguity exists in the Policy to support its proposition that the Business Income Blanket Limit of Insurance applies. (Count Basie Br. at 20-22.) Count Basie cherry-picks a portion of the Communicable Disease Business Income Coverage that provides: "This Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance." (*Id.* at 170; Count Basie Br. at 13.) This sentence does not modify the clear language of the Policy because the Limit of Insurance for the Communicable Disease Business Income Coverage is $100,000 per occurrence and there is no modification to this language in the Summary of Premises section.

Furthermore, Count Basie conflates the Business Income Coverage with the Communicable Disease Business Income Coverage in further support of its assertion that the Business Income Blanket Limit of Insurance applies. (Count Basie Br. at 14-17.) However, the two coverages are not the same. In the August 2021 Opinion, the Court explained the Business Income Coverage is triggered when there is "direct physical loss of or damage to" a property within one mile of Count Basie's insured premises. (ECF 24 at 19.) The Court went on to explain coverage under the provision is subject to several exclusions under the Policy, including the Microorganism Exclusion, and concluded "the Microorganism Exclusion bars Count Basie's recovery under the Business Income Coverage." (*Id.*) In contrast, the Communicable Disease Business Income Coverage provides, in pertinent part:

> If this BUSINESS INCOME COVERAGE (EXCLUDING EXTRA EXPENSE) is included in this Commercial Property Coverage Part, the coverage provided at a **"premises"** or **"reported unscheduled premises"** will also cover the actual loss of **"business income"** you sustain resulting from the necessary **"suspension"** of your **"operations"** if the **"suspension"** is caused by an order of an authorized public health official or governmental authority that prohibits access to the **"premises"** or **"reported unscheduled premises"**, or a portion of that **"premises"** or **"reported unscheduled premises"**. That order must result from the discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at that **"premises"** or **"reported unscheduled premises"**.

(ECF 80-4 at 170.) The Communicable Disease Business Income Coverage is one of the numerous Additional Coverages provided by the Policy that maintains different elements and a different Limit of Insurance.

Moreover, Count Basie also urges the Court to find an ambiguity in the Policy because of Zurich's failure to "provide a more specific limit of insurance for business income for the CD Coverage on the Summary of Premises Declarations, while it was simultaneously stating that there was no business income coverage for the other two coverages under the same Historic Properties Form." (Count Basie Br. at 16-20.) However, the Policy's omission of the Communicable Disease Business Income Coverage from the Declarations does not then alter the Limit of Insurance. Rather, as the Policy provides in pertinent part: "Limits of Insurance applicable at a **"premises"** that differ from those indicated below will be shown under the Summary of Premises section of this Declarations for that **"premises."** (ECF 80-4 at 35.) Reading the Policy as a whole, it is clear the Limit of Insurance for the Communicable Disease Business Income Coverage is not modified by the Summary of Premises section. *See FYT Supplies, Inc. v. Nautilus Ins. Co.*, No. 20-6844, 2021 WL 321443, at *8 (D.N.J. Feb. 1, 2021) ("The policy and endorsements, however, must be read as a whole, so as to give effect to all of their parts; no interpretation should be adopted that renders any of them a nullity.")

Finally, Count Basie contends "Zurich could have removed the ambiguity it created" by either specifically listing the CD Limit in the Summary of Premises Declarations or deleting the last sentence of the Additional Coverages Declarations which provides "[i]f a specific coverage is shown at a **"premises"** as 'Included in Blanket Limit of Insurance', then that Blanket Limit of Insurance replaces, and is not in addition to, the Limits of Insurance shown below for that coverage." (ECF 80-4 at 35.) While Count Basie suggests alternative wording would have made

the Communicable Disease Business Income Coverage clearer, "in the absence of an ambiguity, a court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." *Chubb Custom Ins. Co.*, 948 A.2d at 1289 (quoting *Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195, 202 (N.J. 2001)); *see also Villamil v. Sentinel Ins. Co.*, 356 F. Supp. 3d 418, 423 (D.N.J. 2018) ("[W]here the language of the contract is clear, extrinsic evidence may not be considered.").[8] Having determined the Limit of Insurance for the Communicable Disease Business Income Coverage unambiguously provides for $100,000 per occurrence, "the [C]ourt is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994).[9]

**B.  The Threat of the Spread of COVID-19, Not the Executive Orders, Triggers Coverage Under the Communicable Disease Business Income Coverage.**

As previously addressed, the Policy Declarations identify a $100,000 per occurrence limit of liability for the Communicable Disease Business Income Coverage. (*See* ECF 80-4 at 35.) Zurich argues Count Basie's losses were the result of a single cause – the threat of the spread of COVID-19, and as such, Count Basie's losses are limited to a single per-occurrence limit. (Zurich SJ at 10.) In contrast, Count Basie asserts the issuance of the Executive Orders triggered the

---

[8]  In support of its argument, Count Basie refers to insurance policies Zurich issued by for coverage periods November 1, 2021 through November 1, 2022 and November 1, 2022 through November 1, 2023.  (Count Basie Br. at 21-22.) As the Court finds the Policy's language is unambiguous, it declines to consider extrinsic evidence. *See Villamil*, 356 F. Supp. 3d at 423 ("Only when a policy's language is ambiguous, may a court rely upon extrinsic or parol evidence to determine the intent of the parties; however, where the language of the contract is clear, extrinsic evidence may not be considered.")

[9]  Moreover, even if the Court were to find ambiguities existed – which it does not – it has previously found Count Basie is a sophisticated consumer. (*See* ECF 24 at 21 ("Count Basie is not an unsophisticated consumer, but a business corporation that runs at least six facilities."); ECF 32 at 12 ("As the Court determined in its August 2021 Opinion, Count Basie is not an unsophisticated consumer, but a business corporation running at least six facilities.")) While New Jersey courts do ordinarily construe insurance contract ambiguities in favor of the insured, sophisticated commercial insureds—such as Count Basie in this case—do not receive this benefit. *Oxford Realty Grp.*, 160 A.3d at 1270 ("Sophisticated commercial insureds . . . do not receive the benefit of having contractual ambiguities construed against the insurer.").

Communicable Disease Business Income Coverage and therefore, Count Basie is entitled to $100,000 per Executive Order. (Count Basie Br. at 22-23.)

The Policy defines "occurrence" to "include[] all losses or damages that are attributable directly or indirectly to one cause or a series of similar causes. All such losses or damages will be treated as one cause." (ECF 80-4 at 43.) The Third Circuit has expressed "the general rule is that an occurrence is determined by the cause or causes of the resulting injury. *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir. 1982); *see also Bomba v. State Farm Fire & Cas. Co.*, 879 A.2d 1252, 1255 (N.J. App. Div. 2005) ("'[F]or the purpose of counting the number of occurrences, the term must be construed from the point of view of the cause or causes of the accident rather than its effect.'" (quoting *Doria v. Ins. Co. of N. Am.*, 509 A.D. 220, 223 (N.J. App. Div. 1986))). Under this analysis, a court should ascertain whether "there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damages." *Id.*

In applying this test, the Court finds that the injury sustained by Count Basie stems from a common cause – the spread of COVID-19. The Executive Orders issued by Governor Murphy would not have been enacted but for the pandemic. (*See, e.g.*, ECF 80-5.) Executive Order No. 103 declared "a Public Health Emergency and State of Emergency exist[ed] in the State of New Jersey[.]" (*Id.* at 4.) Executive Order No. 104 ordered, among other things, the closure of performing arts centers effective March 16, 2020 at 8:00 p.m., (ECF 80-6 at 7-8) and Executive Order No. 107 ordered, among other things, the continued closure of performing arts centers. (ECF 80-7 at 9). The subsequent Executive Orders that were issued (i) expressed the Public Health Emergency declared in Executive Order No. 103 continued to exist in New Jersey; (ii) ordered that "[a]ll Executive Orders adopted in whole or in part based on the authority under the [Emergency Health Powers Act] to respond to the Public Health Emergency presented by the COVID-19

outbreak remain in full force and effect"; and (iii) referenced Executive Order No. 103's declaration of a Public Health Emergency and stated "the facts and circumstances of which are adopted by reference herein[.]" (ECF 80-8 at 2, 5-6; ECF 80-9 at 2, 5-6; ECF 80-10 at 2, 6; ECF 83-2 at 175, 179; ECF 83-2 at 182, 186; ECF 83-2 at 194, 198; ECF 83-2 at 212, 216.).[10] The language of the Executive Orders clearly demonstrates they were issued as a result of the ongoing threat caused by the spread of COVID-19 and that the subsequent Executive Orders were issued in furtherance of Executive Order No. 103's declaration of a Public Health Emergency.

Notwithstanding the Executive Orders' clear language, Count Basie asserts each Executive Order constitutes a separate occurrence as "[i]t was each of the separate and severable Executive Orders which prohibited Count Basie from operating its business and which caused Count Basie's business income loss while each Order remained in effect." (Count Basie Br. at 31.) Count Basie relies upon the words "an order" located in the Communicable Disease Business Income Coverage in support of its proposition. (*Id.* at 23.) The Communicable Disease Business Income Coverage provides, in pertinent part:

> If this BUSINESS INCOME COVERAGE (EXCLUDING EXTRA EXPENSE) is
> included in this Commercial Property Coverage Part, the coverage provided at a

---

[10] Pursuant to N.J.S.A. 26:13-3(a), Governor Murphy had the authority, "in consultation with the commissioner and the Director of the State Office of Emergency Management[]" to

declare a public health emergency. In declaring a public health emergency, the Governor shall issue an order that specifies:

(1) the nature of the public health emergency;

(2) the geographic area subject to the declaration;

(3) the conditions that have brought about the public health emergency to the extent known; and

(4) the expected duration of the state of public health emergency, if less than 30 days. Such order may also prescribe necessary actions or countermeasures to protect the public's health.

N.J.S.A. 26:13-3(b) provides: "Any public health emergency declared pursuant to this act shall be terminated automatically after 30 days unless renewed by the Governor under the same standards and procedures set forth in subsection a. of this section."

> **"premises"** or **"reported unscheduled premises"** will also cover the actual loss of **"business income"** you sustain resulting from the necessary **"suspension"** of your **"operations"** if the **"suspension"** is caused by an order of an authorized public health official or governmental authority that prohibits access to the **"premises"** or **"reported unscheduled premises"**, or a portion of that **"premises"** or **"reported unscheduled premises"**. That order must result from the discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at that **"premises"** or **"reported unscheduled premises"**.

(ECF 80-4 at 170.)

The Policy further provides: "Unless otherwise stated, words that are used in the plural tense include the singular tense (and vice versa)." (*Id.* at 43.) As such, the mere usage of "order" as opposed to "orders" does not alter the proximate cause test utilized by New Jersey courts to determine the cause of loss.

Moreover, in evaluating Virus Exclusion Provisions, courts have considered whether the COVID-19 virus or Executive Orders was the proximate cause of claims for business income losses and courts have universally determined that the Executive Orders are "inextricably tied" to COVID-19, such that "the predominant and proximate cause of [the] [p]laintiff's business-related losses is the COVID-19 virus, not the closure orders that were issued in response to the virus." *T&L Catering, Inc. v. Hanover Ins. Grp., Inc.*, No. 3:20-cv-07934, 2021 WL 2948425, at *4 (D.N.J. July 14, 2021).[11] Put differently, "[t]he virus and the orders are not two equal independent concurrent causes that worked together to cause the loss. The orders are wholly dependent on the

---

[11] The weight of authority adopting this position is considerable. *See, e.g., J.G. Optical, Inc. v. Travelers Co., Inc.*, No. 20-5744, 2021 WL 4260843, at *5 (D.N.J. Sept. 20, 2021); *T&L Catering, Inc.*, 2021 WL 2948425, at *4; *Quakerbridge Early Learning, LLC v. Selective Ins. Co. of Am.*, No. 20-7798, 2021 WL 1214758, at *3-4 (D.N.J. Mar. 31, 2021); *Benamax Ice, LLC v. Merchant Mutual Ins. Co.*, 529 F. Supp. 3d 350, 357-58 (D.N.J. 2021); *Chester C. Chianese DDS LLC v. Travelers Cas. Ins. of Am.*, No. 20-5702, 2021 WL 1175344, at *3 (D.N.J. Mar. 27, 2021); *Carpe Diem Spa, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-14860, 2021 WL 1153171, at *3 (D.N.J. Mar. 26, 2021); *Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, No. 20-8676, 2021 WL 1040490, at *6 (D.N.J. Mar. 18, 2021); *Colby Rest. Grp. Inc. v. Utica Nat'l Ins. Grp.*, No. 20-5927, 2021 WL 1137994, at *4-5 (D.N.J. Mar. 12, 2021); *Body Physics v. Nationwide Ins.*, 524 F. Supp. 3d 372, 380 (D.N.J. 2021); *In the Park Savoy Caterers LLC v. Selective Ins. Grp., Inc.*, No. 20-6869, 2021 WL 1138020, at *4 (D.N.J. Feb. 25, 2021); *Causeway Auto.*, 2021 WL 486917, at *6.

virus."[12] While the Court recognizes these decisions are not addressing Communicable Disease Business Income Coverage provisions, the Court finds the analysis applies with equal force and further supports a finding that the occurrence triggering coverage is the spread of COVID-19. Count Basie's coverage under the Communicable Disease Business Income Coverage would not be triggered but for the COVID-19 pandemic which led Governor Murphy to enter the Executive Orders.[13] Accordingly, the Court concludes the ongoing threat of the spread of COVID-19 triggered Count Basie's coverage under the Communicable Disease Business Income Coverage.

While the Court finds the ongoing threat posed by the spread of COVID-19 triggers coverage under the Communicable Disease Business Income Coverage, even applying Count Basie's logic that the Executive Orders triggers coverage under the Policy would still limit Count Basie's coverage to $100,000. Count Basie relies upon *Dental Experts, LLC v. Mass. Bay Ins. Co.*, No. 20-5887, 2022 WL 2528104 (N.D. Ill. July 7, 2022) in support of its argument that the Executive Orders trigger coverage. (Count Basie Br. at 29-30.) The Policy at issue in *Dental Experts* contained a disease contamination provision, which provided:

> We will pay the actual covered loss of "business income" or "extra expense" you sustain due to the necessary "suspension" or delay of your "operations" during the "period of Restoration". The "suspension" must be caused by a disease contamination event declared by the National Center for Disease Control, or the applicable city, county or state Department of Health.

---

[12] *Causeway Auto., LLC v. Zurich American Ins. Co.*, No. 20-8393, 2021 WL 486917, at *6 (D.N.J. Feb. 10, 2021) (citation omitted); *see also N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 79 (D.N.J. 2020) ("There is no doubt that COVID-19, a virus, caused Governor Murphy to issue the Executive Order mandating closure of the restaurant."); *Eye Care Ctr. of N.J., PA v. Twin City Fire Ins. Co.*, 522 F. Supp. 3d 72, 76 (D.N.J. 2021) ("But for the 'spread' of COVID-19, governments would not have issued closure orders, and Eye Care would not have stopped performing non-emergency procedures.").

[13] While the Court finds the ongoing threat posed by the spread of COVID-19 triggers coverage under the Communicable Disease Business Income Coverage, even applying Count Basie's logic that the Executive Orders triggers coverage under the Policy would still limit Count Basie's coverage to $100,000. The Policy defines "occurrence" to "include[] all losses or damages that are attributable directly or indirectly to one cause or a series of similar causes. All such losses or damages will be treated as one cause." (ECF 80-4 at 43.) As the Court has already expressed, the Executive Orders were issued as part of New Jersey's continuing response to the ongoing threat of the COVID-19 pandemic. As such, even if the Executive Orders were considered to trigger Count Basie's coverage, Count Basie would only be entitled to $100,000 as there was a singular occurrence.

(*Id.* at *1.)

The provision provided coverage as $25,000 per occurrence. *Id.* The parties' cross motions for summary judgment turned on "whether there was a single occurrence or multiple occurrences under the disease contamination provision of the insurance policy." *Id.* at 2. The court agreed with the plaintiff's argument that the executive orders triggered coverage. *Id.* at 3. Notwithstanding, the court concluded, in relevant part: "No reasonable factfinder could construe an executive order that flows from a prior order by the same authority—in other words, a subsequent executive order in the same jurisdiction that effectively served as a renewal—as a separate occurrence, as that order was causally dependent on the original order requiring closure." *Id.* at 4.

Here, the Policy defines "occurrence" to "include[] all losses or damages that are attributable directly or indirectly to one cause or a series of similar causes. All such losses or damages will be treated as one cause." (ECF 80-4 at 43.) As the Court has already expressed, the Executive Orders were issued as part of New Jersey's continuing response to the ongoing threat of the COVID-19 pandemic. As such, even if the Executive Orders were considered to trigger Count Basie's coverage, Count Basie would only be entitled to $100,000 as there was a singular occurrence.

### C. The CD Limit Applies "Per Occurrence," Not "Per Premises."

Zurich argues the CD Limit does not apply separately to each premise and therefore, Count Basie is not entitled to coverage for losses sustained at the Theatre, the Conservatory, and the two surface parking lots it had leased.[14] (Zurich Br. at 15.) In contrast, Count Basie asserts the

---

[14] In its moving papers, Zurich argued that Count Basie was not entitled to coverage for loss sustained at two surface parking lots that it had leased as they did not qualify as either premises or unscheduled premises. (*See* Count Basie Br. at 16-18.) Count Basie did not address this argument in its cross-motion for summary judgment. Rather, in the Certification of Count Basie's Chief Financial Officer, Karen Franklin, Count Basie "subtracted from the previous summary the small amount of income for two parking lots which are not considered insured 'premises' under the Policy." (ECF 83-3 ¶ 11.) Accordingly, the Court finds Count Basie is not entitled to coverage for any damages it may have suffered at these two parking lots.

Communicable Disease Business Income Coverage obligates Zurich "to pay Count Basie up to $100,000 per occurrence at any of the three premises defined in the Summary of Premises Declarations." (Count Basie Br. at 32.)

To support its assertion that the CD Limit applies to each premise, Count Basie relies upon one sentence of the Communicable Disease Business Income Coverage, which provides: "The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Communicable Disease Suspension of Operations--Business Income." (ECF 80-4 at 170.) However, the Declarations lists the Limits of Insurance for the Communicable Disease Suspension of Operations as "$100,000 PER OCCURRENCE." (*Id.* at 35.) A plain reading of the Policy provides the Limit of Insurance applies "per occurrence," rather than "per occurrence." *See Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 143 A.3d 273, (N.J. 2016) ("The court's responsibility is to give effect to the whole policy, not just one part of it.") (internal quotation marks omitted); *see also Herbert L. Farkas Co. v. N.Y. Fire Ins. Co.*, 76 A.2d 895, 898 (N.J. 1950) (emphasizing insurance policies "must be considered as a whole and effect given to every part thereof").

The Court's finding that the CD Limit applies "per occurrence" as opposed to "per premises" is further supported by a review of other Limits of Insurance listed in the Policy. There are other forms of coverage that maintain a Limit of Insurance "per premise." For example, the Expediting Expense Coverage lists the Limit of Insurance as "$25,000 PER PREMISES" and the Lock and Key Replacement Coverage lists the Limit of Insurance as "$25,000 PER PREMISES." (*Id.* at 35-36.)  The Third Circuit has expressed: "The use of different language to address the same or similar issue . . . strongly implies that a different meaning was intended. . . . The same language was *not* used, however; and we must assume that the choice of different words was deliberate."

*Great Am. Ins. Co v. Norwin Sch. Dist.*, 544 F.3d 229, 246 (3d Cir. 2008). As the Policy utilizes "per premises" for other Limits of Insurance, the Court finds the Policy intended for the CD Limit to apply "per occurrence."[15]

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Zurich's Motion for Summary Judgment and **DENIES** Count Basie's Cross-Motion for Summary Judgment. An appropriate Order accompanies this Opinion.


*/s/  Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:        Clerk
cc:           Leda D. Wettre, U.S.M.J.
               Parties

---

[15] Count Basie further claims Zurich waived its coverage defenses and has no right to raise them in the declaratory judgment action. (Count Basie Br. at 37-40.) The Court rejects this argument as Zurich's letter dated May 1, 2020 addressed the Communicable Disease Business Income Coverage and indicated Count Basie was entitled to $100,000 for its insurance claim. (*See* ECF 80-12 at 2-3.) As Zurich addressed the applicability of the Communicable Disease Business Income Coverage and the CD Limit in its May 1, 2020 letter, the Court finds it did not waive its coverage defense.